# NEW YORK LIFE INSURANCE COMPANY *v.* HEAD.

### ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 254.   Argued March 10, 1914.—Decided June 8, 1914.

There is a clear distinction between questions concerning the operation and effect of the law of a State within its borders and upon the conduct of persons within its jurisdiction, and questions concerning the right of the State to extend its authority beyond its borders with the same effect; and a decision upon the former does not constitute a ground for refusing to entertain a writ of error to review the judgment of the state court involving the latter.

A State may not extend the operation of its statutes beyond its borders into the jurisdiction of other States, so as to destroy and impair the

right of persons not its citizens to make a contract not operative within its jurisdiction and lawful in the State where made.

Under the full faith and credit clause of the Federal Constitution the courts of one State are not bound to declare a contract, which was made in another State and modified a former contract, illegal because it would be illegal under the law of the State where the original contract was made and of which neither of the parties is a resident or citizen.

The power that a State has to license a foreign insurance company to do business within its borders and to regulate such business does not extend to regulating the business of such corporation outside of its borders and which would otherwise be beyond its authority.

The Constitution and its limitations are the safeguards of all the States preventing any and all of them under the guise of license or otherwise from exercising powers not possessed.

A statute of Missouri regulating loans on policies of life insurance by the company issuing the policy, *held* not to operate to affect a modifying contract made in another State subsequent to the loan by the insured and the company neither of whom was a resident or citizen of Missouri.

241 Missouri, 403, reversed.

THE facts, which involve the jurisdiction of this court to review judgments of the state court and also the power of a State to regulate the business beyond its borders of a foreign corporation licensed to do business therein, are stated in the opinion.

*Mr. James H. McIntosh,* with whom *Mr. Gardiner Lathrop, Mr. Cyrus Crane, Mr. O. W. Pratt* and *Mr. S. W. Moore* were on the brief, for plaintiff in error:

The original contract of insurance was entered into between non-residents of Missouri, who agreed that it should be controlled by the laws of New York. This was a valid provision and cannot be annulled by the courts of Missouri. *Smith* v. *Mutual Benefit L. I. Co.,* 173 Missouri, 329; *Burridge* v. *New York Life Ins. Co.,* 211 Missouri, 158; *Gibson* v. *Connecticut Fire Ins. Co.,* 77 Fed. Rep. 561; *London Assurance* v. *Companhia de Moagens,* 167 U. S. 149;

*Kroegher* v. *Calivada Colonization Co.*, 119 Fed. Rep. 641, 652; *Mutual Life Ins. Co.* v. *Dingley*, 100 Fed. Rep. 408.

The cases relied on by defendant in error which dealt with contracts of residents or citizens of Missouri, such as *Cravens* v. *Insurance Co.*, 148 Missouri, 583, 593; *Price* v. *Insurance Co.*, 48 Mo. App. 281; *Horton* v. *Insurance Co.*, 151 Missouri, 604, 612; *Burridge* v. *Insurance Co.*, 211 Missouri, 162; *Smith* v. *Mutual Ins. Co.*, 173 Missouri, 329; *Whitfield* v. *Insurance Co.*, 205 U. S. 489; *Equitable Life Ins. Co.* v. *Clements*, 140 U. S. 226; *Life Ins. Co.* v. *Russell*, 77 Fed. Rep. 94, are distinguishable.

The policy loan agreement was not a Missouri contract. It was signed and delivered outside the State of Missouri by parties who were non-residents of that State and cannot be controlled or governed by the Missouri non-forfeiture laws.

The original contract could be lawfully amended or changed by the loan agreement. 1 Cooley's Briefs Insurance, 900; *S. S. White Co.* v. *Delaware Ins. Co.*, 105 Fed. Rep. 642; *Leonard* v. *Charter Oak Ins. Co.*, 65 Connecticut, 529; *Fireman's Fund Ins. Co.* v. *Dunn*, 22 Ind. App. 333; *Kattelman* v. *Fire Assn.*, 79 Mo. App. 447.

The right of plaintiff in error to make contracts is protected by § 1 of the Fourteenth Amendment and to attempt to deprive it of this right raises a constitutional question and gives this court jurisdiction. *Allgeyer* v. *Louisiana*, 165 U. S. 578; *Lochner* v. *New York*, 198 U. S. 45, 52; *Door Co.* v. *Fuelle*, 215 Missouri, 421, 458; *Pennoyer* v. *Neff*, 95 U. S. 714, 722; *Union Bank* v. *Commissioners*, 90 Fed. Rep. 7; *Olcutt* v. *Supervisors*, 16 Wall. 677, 690; *Havemeyer* v. *Iowa County*, 3 Wall. 294; *Keller* v. *Insurance Co.*, 58 Mo. App. 557; *Whitfield* v. *Insurance Co.*, 205 U. S. 480; Greenhood on Public Policy, 2.

*Mr. Buckner F. Deatherage*, with whom *Mr. Goodwin Creason*, *Mr. James S. Botsford*, *Mr. W. P. Borland* and

*Mr. James A. Reed* were on the brief, for defendant in error:

The defendant, although a foreign corporation created and existing under the laws of New York, came into Missouri under its license and permission and made the contracts of insurance sued upon in these actions, in the State of Missouri, with the same force and effect and subject to the insurance laws of Missouri the same as if it had been and were a corporation created under the laws of Missouri instead of the laws of New York, and for the purposes of this case defendant must be taken to be the same in all respects as a Missouri corporation.

The contracts in these cases having been entered into in Missouri, have the same legal effect and force as if the insured had lived in Missouri, in which State he was born, instead of living in New Mexico, at the time of making these contracts. The people of all the States and Territories of the United States have the right to buy and sell real estate in Missouri, own property therein and enter into contracts therein, the same as citizens and residents of Missouri. See § 748, Statutes Missouri, regarding aliens, 1 Rev. Stat. Missouri of 1909, p. 355.

Under the Fourteenth Amendment plaintiffs were guaranteed the same right as if they had lived in Missouri. *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369; *R. W. Co.* v. *Mackey*, 127 U. S. 205, 209; *Duncan* v. *Missouri*, 152 U. S. 377; *Frazer* v. *McConway Co.*, 82 Fed. Rep. 257; *Templar* v. *Bankers Board Ex.*, 131 Michigan, 254; *Steed* v. *Hamey*, 18 Utah, 367; *Pearson* v. *Portland*, 69 Maine, 278.

The question of the situs of contracts in cases where the question of their validity depends upon the laws of the State where they are made does not depend upon the residence of the parties. *Napier* v. *Bankers Ins. Co.*, 100 N. Y. Supp. 1072.

The policy was issued upon the life of a man residing, at the date of the issuing thereof, in the city of Chicago

in the State of Illinois; and, so far as the evidence in this case shows, that continued to be his residence up to the date of his death. If this policy is to be construed as an Illinois contract, the statute above referred to would not apply. *Mutual Life Ins. Co.* v. *Hill*, 193 U. S. 551; *Mutual Life Ins. Co. of New York* v. *Cohen*, 179 U. S. 262. Notwithstanding the fact that the policy was written upon the life of a person residing out of the State of New York, upon the evidence in this case the contract must be deemed to be a New York contract. The policy purports to be signed and delivered at the city of New York.

The residence of the parties has no influence in determining the place where a contract is made. *Milliken* v. *Pratt*, 125 Massachusetts, 374; *Golden* v. *Ekerb*, 52 Missouri, 260; *Richardson* v. *DeGinesville*, 107 Missouri, 422; *Ruhe* v. *Byck*, 124 Missouri, 178; *Reed* v. *Telegraph Co.*, 135 Missouri, 661; *Horton* v. *N. Y. Life Ins. Co.*, 151 Missouri, 604; *Elliott* v. *Des Moines Life Ass.*, 163 Missouri, 132; *Thompson* v. *Traders Ins. Co.*, 169 Missouri, 12; *Park* v. *Connecticut Ins. Co.*, 26 Mo. App. 511; *Clothing Company* v. *Sharpe*, 83 Mo. App. 385; *Pietri* v. *Seguenot*, 96 Missouri, 258.

The contention of defendant's counsel that its offer to pay $89.00 to satisfy a liquidated indebtedness for which the judgment given was for about $7500.00 and that such offer of $89.00 extinguishes plaintiff's liquidated demands, is not supported by anything in the law. 1 Cyc. 319; *Wetmore* v. *Crouch*, 150 Missouri, 671, 672, 682, 683. See *Cravens* v. *Insurance Co.*, 148 Missouri, 583; aff'd *Insurance Co.* v. *Cravens*, 178 U. S. 389.

These policies were and are Missouri contracts. *Cravens* v. *Ins. Co.*, 148 Missouri, 583; *S. C.*, aff'd 178 U. S. 389; *Equitable Life* v. *Clements*, 140 U. S. 226; *Whitfield* v. *Ins. Co.*, 205 U. S. 489; *Moore* v. *Ins. Co.*, 112 Mo. App. 696; *Ins. Co.* v. *Russell*, 77 Fed. Rep. 94, 23 C. C. A. 43; *Ins.*

*Co.* v. *Twyman,* 92 S. W. Rep. 335; *Capp* v. *Ins. Co.,* 94 S. W. Rep. 734; *Horton* v. *Ins. Co.,* 151 Missouri, 604; Joyce on Ins., § 194; *Napier* v. *Ins. Co.,* 100 N. Y. Supp. 1072; *Burridge* v. *Ins. Co.,* 211 Missouri, 158, 178.

Defendant's proposition that the loan contracts of 1904 had the effect of wiping out the policies is erroneous. *Smith* v. *Insurance Co.,* 173 Missouri, 329, 341; *Burridge* v. *N. Y. Life Ins. Co.,* 211 Missouri, 158, 178; *Cristensen* v. *N. Y. Life Ins. Co.,* 152 Mo. App. 551.

Defendant had no right to come into Missouri and make contracts in defiance of law. The right of contract is not an unlimited, unqualified one, but is always subject to the law in force at the time of making the contract. *Wilson* v. *Drumrite,* 21 Missouri, 325; *Villa* v. *Rodriguez,* 12 Wall. 339; *State* v. *Fireman's Ins. Co.,* 152 Missouri, 1; *State* v. *Cantwell,* 179 Missouri, 245; *Holden* v. *Hardy,* 169 U. S. 366; *Karness* v. *Insurance Co.,* 144 Missouri, 413; *Havens* v. *Insurance Co.,* 123 Missouri, 403; *Henry* v. *Evans,* 97 Missouri, 47.

The relation between an insurance company and a policyholder is fiduciary in its character, and one that calls for the protection of the legislature by wholesome legislation. Cases *supra* and *Smith* v. *Mutual Benefit Ins. Co.,* 173 Missouri, 329; *Mutual Life Ins. Co.* v. *Twyman,* 92 S. W. Rep. 335.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

In March, 1894, Richard G. Head, a citizen and resident of New Mexico, being temporarily in Kansas City, Missouri, made application at a branch office of the New York Life Insurance Company for two policies of insurance for ten thousand dollars each on his own life for the benefit of his minor son, Richard G. Head, Jr. The application stated the residence of Head in New Mexico and it was stipulated that the policy applied for when issued should

be considered as having been issued in New York and be treated as a New York contract.  When Head made the application he handed a note for the premium to the agent with instructions when the policies came to turn them over to a friend to hold for him.  The policies were issued, were delivered as directed and were subsequently turned over to Head when he again came to Kansas City.  All the premiums but the first, with perhaps one exception were paid in New Mexico or at an agency of the company in Colorado.  Nine years after the issue of the policies, that is, in 1903, in New Mexico, Head transferred one of the policies to his daughter, Mary E. Head, the transfer having been either by way of original authority or ratification duly sanctioned by the proper probate court in the county of New Mexico where Head was domiciled.  In 1904, Mary E. Head, under the policy of which she thus became the beneficiary borrowed from the New York Life Insurance Company the sum of $2,270.  The loan was requested by a letter written from Las Vegas, New Mexico, to New York, and accompanied by the policy and an executed loan agreement in the form usually required by the company and which conformed to the requirements of the New York law.  The loan bore 5 per cent. interest and the agreement provided that it should be payable at the home office in New York and that if any premium on the policy or any interest on the loan were not paid when due, "settlement of said loan and of any other indebtedness on said policy shall be made by continuing said policy, without further notice, as paid-up insurance of reduced amount, in accordance with Section 88, Chapter 690, of the Laws of 1892 of the State of New York."

There was default in April, 1905, in the payment of the interest on the loan and the premium on the policy and pursuant to the terms of the loan agreement and the law of New York the policy was settled, the sum remaining from the accumulated surplus after paying the loan and

the past due premium being applied to the purchase of paid up insurance and the policy was at the request of Head and his daughter, sent to them in New Mexico in May, 1905, and was in the possession of the daughter when Head died in April, 1906.

In September, 1906, this suit was commenced in a court of the State of Missouri, by Mary E. Head, the beneficiary, to recover the full amount of the policy. Stating the grounds for relief which were relied upon not as literally expressed in the pleadings, but with reference to the ultimate assumption upon which the right to recover was essentially based, it was as follows: That although it was true that if the face of the policy was adhered to and the terms of the loan agreement were considered and the law of New York applied the settlement of the policy would be binding, it was not so binding, but on the contrary was void because at the time the policy was written there were statutes in force in the State of Missouri which made it the duty of the company to retain from the accumulated surplus a given percentage thereof and in case it was necessary to save forfeiture to apply the sum of such retained percentage to the payment of premium on temporary insurance as far as it would go and if this duty had been discharged when the failure to pay took place the sum of the retained percentage would have been adequate to extend the insurance to such a period as would have caused the full amount of the policy to be a valid and existing risk at the death of Head. Resting thus upon the Missouri statutes, of course the fundamental assumption upon which the right to recover was based was the controlling operation and effect of the Missouri law upon the policy, upon the terms of the loan agreement and upon the law of the State of New York which would otherwise govern, as New York was the place where the loan agreement was made and the adjustment of the policy took place. As there is no controversy concerning the meaning of the

Missouri statutes if they were controlling, we content our-
selves with referring to the sections of the Revised Statutes
of Missouri which are relied upon as having produced the
consequences stated: Sections 5856–5859 of the Revised
Statutes of Missouri of 1889, and 7897–7900 of the Revised
Statutes of Missouri of 1899. And the defense, considered
also in its ultimate aspect, but asserted the validity of the
settlement made in New York under the loan agreement,
denied the applicability of the statutes of Missouri to that
settlement and expressly insisted that such statutes could
not be applied to the situation without violating the due
process clause of the Fourteenth Amendment and depriv-
ing of the right of freedom of contract guaranteed by
that Amendment and giving rise to the impairment of the
obligation of a contract contrary to the provisions of § 10,
Article I of the Constitution of the United States.

There was recovery in the court of first instance for the
amount claimed under the policy, the court maintaining
the supremacy of the Missouri statutes. In the Supreme
Court to which the case was taken after a hearing in a
division thereof the judgment below was affirmed on an
opinion which expressly held that the policy of insurance
was a Missouri contract controlled by the Missouri law,
and that by the operation and effect of that law the loan
agreement made in the State of New York and the settle-
ment effected in that State in accordance with that agree-
ment conformably to the laws of New York was con-
trolled by the Missouri statute and was void. And the
opinion so holding was in express terms adopted by the
court *in banc* where the case was reheard.

The rights under the Contract Clause of the Constitu-
tion of the United States and the Fourteenth Amendment
which, as we have stated, were asserted below, form the
basis of the assignments of error. As the conflicting con-
tentions concerning these constitutional questions ad-
vanced to refute on the one hand and to sustain on the

other the reasons which led the court below to its conclusion involve the whole case, to briefly state at the outset the propositions upheld below will concentrate the issues and serve to give bold relief to the questions which require to be decided. (a) Determining whether the contract was a Missouri contract made in that State and governed by its laws, the court held that the express stipulation in the contract to the effect that the policy was to be considered as issued from the home office and be treated as a New York contract was overborne by the fact that the application for the policy was made to the Kansas City agency, that the policy was sent there for delivery and that the first premium was there paid. (b) In deciding that this view was not modified by the fact that the insured was a non-resident of Missouri and by the further fact that on the face of the policy it was clearly manifest that it was executed not for the purpose of having effect in Missouri but to be operative outside of that State, the court said:

"It has been repeatedly ruled in this State since the enactment of sections 5856 et seq. of the revision of 1889 (now R. S. 1909, sec. 6946) and the Act of 1891 (Laws 1891, p. 75), R. S. 1899, secs. 1024 and 1026 (now R. S. 1909, secs. 3037, 3040), that foreign insurance companies admitted to carry on their business in this State, can only contract within the limits prescribed by our statutes, and that in the conduct of the business under the license granted by this State, they 'shall be subjected to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers.' The effect of these decisions is to write into every insurance contract made by a foreign insurance company, so licensed, in this State all of the provisions of the statutes of this State appurtenant to the making of such contract, and which define and measure the reciprocal rights and duties of the parties thereto.

These statutes are declaratory of the public policy of this State, and inhibit the doing of the business of insurance in this State by any corporation contrary to their regulations by annulling all the stipulations which offend the provisions of the statutes. (*Horton* v. *Ins. Co.*, 151 Missouri, 604; *Smith* v. *Ins. Co.*, 173 Missouri, 329; *Burridge* v. *Ins. Co.*, 211 Missouri, 158; *Cravens* v. *Ins. Co.*, 148 Missouri, 583; *Ins. Co.* v. *Cravens*, 178 U. S. 389; *Whitfield* v. *Ins. Co.*, 205 U. S. 489, affirming *Keller* v. *Ins. Co.*, 58 Mo. App. 557.)" (241 Missouri, p. 413.)

(c) In disposing of the contention that as the loan agreement was made in New York by persons not citizens of Missouri and was sanctioned by the law of New York it could not be treated as void by extending the Missouri statutes into the State of New York without a violation of the Fourteenth Amendment and without impairing the obligation of a contract, the court said (p. 418):

"It is not an open question in this State, that all subsidiary contracts made by the parties to an insurance contract are within the contemplation and purview of the original contract, and are not to be treated as independent agreements. This being so, they are inefficacious to alter, change or modify the rights and obligations as they existed under the original contract of insurance. (*Burridge* v. *Ins. Co., supra; Smith* v. *Ins. Co., supra.*)"

Before approaching the constitutional questions relied upon in the light of these rulings we must dispose of a motion to dismiss. It rests upon the ground that as the court below sustained its ruling by reference to a line of state decisions, a leading one of which had been affirmed by this court (*New York Life Insurance Co.* v. *Cravens*, 178 U. S. 389) prior to the decision below, therefore as the basis for jurisdiction had been demonstrated to be unfounded by a decision of this court announced prior to the time the writ of error was prosecuted, there was no substantial ground upon which to base the suing out of the writ and it

must be dismissed. But the contention rests upon a plain misconception as to what was involved and decided in the *Cravens Case*, since that case but concerned a contract of insurance made in Missouri as to a citizen of that State and required it only to be determined whether rights under the Constitution of the United States had been denied by the ruling of the state court holding void a forfeiture of a policy which had been declared by the corporation for a failure to pay in Missouri a premium there due when such forfeiture was in direct violation of the prohibition of the state law. The difference therefore between that case and this is that which in the nature of things must obtain between questions concerning the operation and effect of a state law within its borders and upon the conduct of persons confessedly within its jurisdiction, and its right to extend its authority beyond its borders so as to control contracts made between citizens of other States and virtually in fact to disregard the law of such other States by which the acts done were admittedly valid.

Coming to the merits, to narrow the subject to be decided as much as possible, we pass the consideration of the ruling below holding that under the proof the contract was a Missouri contract and therefore for the sake of argument only concede that there was power in the State to treat the contract made for the purposes stated as a Missouri contract and to subject it as to matters and things which were legitimately within the state authority to the rule of the state law. And this concession brings us to consider the second general inquiry which is the power of the State of Missouri to extend the operation of its statutes beyond its borders into the jurisdiction of other States, so as in such other States to destroy or impair the right of persons not citizens of Missouri to contract, although the contract could in no sense be operative in Missouri and although the contract was sanctioned by the law of the State where made. That is to say, the right of a State where a contract

concerning a particular subject-matter not in its essence intrinsically and inherently local is once made within its borders not merely to legislate concerning acts done or agreements made within the State in the future concerning such original contract, but to affect the parties to such original contract with a perpetual contractual paralysis following them outside of the jurisdiction of the State of original contract by prohibiting them from doing any act or making any agreement concerning the original contract not in accord with the law of the State where the contract was originally made. In other words, concretely speaking we must consider the validity of the loan agreement, that is, how far it was within the power of the State of Missouri to extend its authority into the State of New York and there forbid the parties, one of whom was a citizen of New Mexico and the other a citizen of New York, from making such loan agreement in New York simply because it modified a contract originally made in Missouri. Such question, we think, admits of but one answer since it would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State and in the State of New York and there destroy freedom of contract without throwing down the constitutional barriers by which all the States are restricted within the orbits of their lawful authority and upon the preservation of which the Government under the Constitution depends. This is so obviously the necessary result of the Constitution that it has rarely been called in question and hence authorities directly dealing with it do not abound. The principle however lies at the foundation of the full faith and credit clause and the many rulings which have given effect to that clause.[1]

---

[1] *Huntington* v. *Attrill*, 146 U. S. 657; *Tilt* v. *Kelsey*, 207 U. S. 43; *Fauntleroy* v. *Lum*, 210 U. S. 230; *American Express Co.* v. *Mullins*, 212 U. S. 311; *Converse* v. *Hamilton*, 224 U. S. 243. And see *Bedford* v. *Eastern Building Ass'n*, 181 U. S. 227.

It is illustrated as regards the right to freedom of contract by the ruling in *Allgeyer* v. *Louisiana,* 165 U. S. 578, and it finds expression in the decisions of this court affirmatively establishing that a State may not consistently with the due process clause of the Fourteenth Amendment extend its authority beyond its legitimate jurisdiction either by way of the wrongful exertion of judicial power or the unwarranted exercise of the taxing power.[1]

And an analysis of the opinion of the court below makes it clear that its ruling was rested not upon any doubt concerning the obvious operation of the Constitution which we have pointed out, but because it was deemed that the peculiar facts and circumstances of this case took it out of the general rule and caused it to be therefore a law unto itself. We say this because while it is true the court based its conclusion upon a line of cases previously decided in that State, as all the cases thus relied upon involved only policies of insurance issued in Missouri to citizens of Missouri and were solely concerned with the effect of acts done in Missouri which it was asserted were forbidden by the statutes of that State existing at the time when the acts were done, it could not have been that the cases were deemed to be controlling upon the principle òf *stare decisis,* but they must have been held to be controlling because of the persuasive force of the reasoning upon which they had been decided. Indeed, this is not left to inference, since the court below in its opinion summarized the reasoning in the previous cases as shown by the passage which we have quoted and made it the ground work of its ruling in this case, that reasoning being as follows: Insurance companies chartered by Missouri took their existence from

[1] *Pennoyer* v. *Neff,* 95 U. S. 714; *Overby* v. *Gordon,* 177 U. S. 214, 222; *Old Wayne Life Ass'n* v. *McDonough,* 204 U. S. 8; *Louisville & J. Ferry Co.* v. *Kentucky,* 188 U. S. 385; *Delaware, L. & W. R. Co.* v. *Pennsylvania,* 198 U. S. 341; *Union Transit Co.* v. *Kentucky,* 199 U. S. 194; *Buck* v. *Beach,* 206 U. S. 392; *W. U. Tel. Co.* v. *Kansas,* 216 U. S. 1, 38.

the grant of the State and therefore had no power to contract in excess of that which was conferred upon them by the State; hence all acts done by them which were prohibited by the state law were *ultra vires* and void. But, as foreign insurance companies have no right to come into the State and there do business except as the result of a license from the State and as the State exacts as a condition of a license that all foreign insurance companies shall be subject to the laws of the State as if they were domestic corporations, it follows that the limitations of the state law resting upon domestic corporations also rest upon foreign companies and therefore deprive them of any power which a domestic company could not enjoy, thus rendering void or inoperative any provision of their charter or condition in policies issued by them or contracts made by them inconsistent with the Missouri law. But when this reasoning is analyzed we think it affords no ground whatever for taking this case out of the general rule and making the distinction relied upon. This is so as the proposition cannot be maintained without holding that because a State has power to license a foreign insurance company to do business within its borders and the authority to regulate such business, therefore a State has power to regulate the business of such company outside its borders and which would otherwise be beyond the State's authority. A distinction which brings the contention right back to the primordial conception upon which alone it would be possible to sanction the doctrine contended for, that is, that because a State has power to regulate its domestic concerns, therefore it has the right to control the domestic concerns of other States. It is apparent therefore that to accept the doctrine it would have to be said that the distribution of powers and the limitations which arise from the existence of the Constitution are ephemeral and depend simply upon the willingness of any of the States to exact as a condition of a license granted to a foreign cor-

poration to do business within its borders that the Constitution shall be inapplicable and its limitations worth nothing. It would go further than this, since it would require it to be decided not only that the constitutional limitations on state powers could be set aside as the result of a license but that the granting of such license could be made the means of extending state power so as to cause it to embrace subjects wholly beyond its legitimate authority.

It is true it has been held that in view of the power of a State over insurance, it might, as the condition of a license given to a foreign insurance company to do business within its borders, impose a condition as to business within the State, which otherwise but for the complete power to exclude would be held repugnant to the Constitution. In other words that a company having otherwise no right whatever for any purpose to go in without a license would not be heard after accepting the same to complain of exactions upon which the license was conditioned as unconstitutional because of its voluntary submission to the same. But even if it be put out of view that this doctrine has been either expressly or by necessary implication overruled or at all events so restricted as to deprive it of all application to this case (see *Harrison* v. *St. L. & San Francisco R. Co.*, 232 U. S. 318, 332, and authorities there cited,) it here can have no possible application since such doctrine at best but recognized the power of a State under the circumstances stated to impose conditions upon the right to do the business embraced by the license and therefore gives no support to the contention here presented which is that a State by a license may acquire the right to exert an authority beyond its borders which it cannot exercise consistently with the Constitution. But the Constitution and its limitations are the safeguards of all the States preventing any and all of them under the guise of license or otherwise from exercising powers not possessed.

As it follows from what we have said that the primary conception upon which the court below assumed this case might be taken out of the general rule and thereby the State of Missouri be endowed with authority which could not be exercised consistently with the Constitution, was erroneous, it results that the necessity for reversal is demonstrated without requiring us to consider other propositions.   But before we come to direct the judgment of reversal, we briefly refer to another aspect of the subject, that is, the ruling of the court below as to the subsidiary nature of the loan agreement and its consequent control by the broader principle upon which its conclusion was really based.  Of course under the view which we have taken of the case, that is, of the want of power of the State of Missouri because the contract of insurance was made within its jurisdiction to forever thereafter control by its laws all subsequent agreements made in other jurisdictions by persons not citizens of Missouri and lawful where made, that is, to stereotype, as it were, the will of the parties contracting in Missouri as of the date of the contract, it is unnecessary to consider whether the loan agreement was or was not subsidiary, but see on this subject *Leonard* v. *Charter Oak Life Ins. Co.,* 65 Connecticut, 529; *Fireman's Ins. Co.* v. *Dunn,* 22 Ind. App. 332; *S. S. White Dental Mfg. Co.* v. *Delaware Ins. Co.,* 105 Fed. Rep. 642; 2 Wharton Conflict of Laws, § 467g and cases cited; and see note 63 L. R. A. 833.

                                        *Reversed.*