## CUNNINGHAM v. GREAT SOUTHERN LIFE INS. CO.

### No. 12870.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 7, 1933.

Rehearing Denied Nov. 18, 1933.

Homer B. Latham, of Bowie, for appellant.

Vinson, Elkins, Sweeton & Weems and Fred R. Switzer, all of Houston, for appellee.

DUNKLIN, Justice.

On April 1, 1912, the Oklahoma Life Insurance Company of Oklahoma City issued to

Leonard H. Aldriedge a life insurance policy reading in part as follows:

"No. 4325                              Age 39 years
"Amount $1,000.00              Premium $33.95·

"The Oklahoma National Life Insurance Company A stock company of Oklahoma City, U. S. A. Will Pay $1,000.00 One Thousand Dollars to Beneficiary Polkey Aldriedge (Wife): of the insured, (the Beneficiary hereunder), at its

"Where payable: Home Office in Oklahoma City, U. S. A.

"When payable: Immediately upon receipt of due proofs of the death of the Insured Leonard H. Aldriedge (The insured hereunder), if such death occur during the continuance of this contract.

"Double Indemnity

"Or, in the event of the death of the Insured during the premium paying period by external violent. and accidental means (Not including suicide, sane or insane, or homicide) and such death resulting directly, independently and exclusively of all other causes, and occurring within twenty days after such injury and before the Insured shall have attained the age of sixty years, the amount payable hereunder, as above, shall be $2,000.00 Two Thousand Dollars.

"Beneficiary Insurance

"Or, in the event of the death of the Beneficiary first above named during the premium paying period, by external, violent and accidental means, (not including suicide, sane or insane, or homicide), and such death resulting directly, independently and exclusively of all other causes from injuries sustained while riding in or on any vehicle or public or private conveyance and occurring within twenty days after such injury, provided such Beneficiary is not at the time of death under sixteen or over sixty years of age, the Company will pay to the Insured hereunder $1,000.00 One Thousand Dollars Immediately upon receipt of due proofs of the death of said Beneficiary in the manner designated.

"Total and Permanent Disability

"Or, if the Insured shall become totally and permanently disabled from any cause whatsoever, so as to prevent him from pursuing any and all gainful occupations, (such total and permanent disability occurring during the premium paying period and before the Insured shall have attained the age of sixty years); and upon furnishing due proofs to the company of such disability, there shall be payable hereunder to the Insured the sum of $1,000.00 One Thousand Dollars Payable in Ten Annual Installments in ten equal annual installments, the first installment being payable immediately upon due proofs of such claim for disability. Should the Insured die before all of the ten installments shall have

been paid, then any remaining installments will be continued to the Beneficiary, or may be commuted and paid in one sum.

"This Policy is issued in consideration of the conditions stated on the second, third, fourth and fifth pages hereof, all of which, including the privileges and benefits there designated, are made a part of this contract as fully as if recited at length over the signatures hereto affixed.

"In witness whereof, The Oklahoma National Life Insurance Company has caused this Policy to be signed by its President and Secretary at Oklahoma City, U. S. A., this First day of April, 1912.
"F. E. Beaty                       O. E. McCartney,
    "Secretary                           President.

"The 4 Special Benefits are enumerated and described on the last page of this Policy.

"Ordinary Life Guaranteed Premium Reduction Policy Non-Participating.

"Second Page

"I. Guaranteed Premium Reductions

"This Policy is issued on the Guaranteed Premium Reduction Non-Participating Plan. The attached Premium Reduction Coupons may be applied by the Insured in any one of the following ways:

"Reduce Cost

"First. The amount called for by each coupon, as it becomes due, may be applied in part payment of the premiums hereon from year to year.

"Reducing Time

"Second. The Insured may elect to pay all premiums in full and leave with the Company the amount represented by the Coupons on this Policy, in which case the Company guarantees that this Policy will be full paid-up, as a Non-Participating whole Life Policy, after paying premiums in cash for Twenty-one full years, and the delivery of all the attached coupons to the company.

"Options end of Twenty Years.

"Third. The Insured may elect to pay all premiums in full without reduction for the full period of Twenty Years, leaving with the Company the amounts represented by the Coupons on this Policy, in which case the Insured shall be entitled to select any one of the Optional Settlements enumerated in Paragraph IX hereof.

"Coupons Payable on Presentation

"Fourth. All coupons left with the Company, and before their surrender for Cash or paid-up insurance, shall be payable at any time on presentation, with compound interest at the rate of three and one-half per cent per annum for each full year such Coupons are left with the Company.

"Coupons Added to Face of Policy at Death

"Fifth. In the event of death of the In-

sured the amount of any Coupons not yet cashed or surrendered, and bearing date prior to said death shall be paid to the Beneficiary with compound interest at the rate of Three and one-half per cent per annum, in addition to the sum insured.

"II. Incontestability

"From Date

"This Policy is incontestable from its date, except for non-payment of premium; and provided, that in the event of death of the Insured by his own hand or act, whether sane or insane, within one year from date hereof, the liability of the Company hereunder is expressly limited to ten per cent of the amount first named herein, which amount shall be in lieu of all other benefits payable hereunder.

"III. Grace in Payment of Premiums

"One Month

"A grace of one month, subject to an interest charge at the rate of six per cent per annum, shall be granted for the payment of every premium after the first, during which month the insurance shall continue in force. If the insured shall die during the month of grace the overdue premium will be deducted from any amount due hereon in any settlement hereunder.

"IV. Automatic Extension

"After One Year

"Should the Insured fail to pay any premium hereon, after one full annual premium has been paid, This Policy, without any action on the part of the Insured, will be extended for the sum first named herein, for the period of time designated in Column Four of the Table of Guaranteed values endorsed on page three hereof.

"V. Guaranteed Surrender Values

"Cash Surrender

"All premiums hereon having been paid in full, the Insured, upon surrender and cancellation thereof, within one month after default in payment of any premium or installment thereof, will be entitled to withdraw, in Cash, the amount designated in Column One of the Table of Guaranteed Values on page Three hereof opposite the year corresponding to the whole number of years for which premiums have been paid.

"Paid up Insurance

"Or, in lieu of Cash, may exchange this Policy for a Paid-up Non-Participating, Whole Life Policy, for the amount designated in column three of said Table of Guaranteed Values opposite the year corresponding to the whole number of years for which premiums have been paid.

"VI. Cash Loans

"Loans at 6 per cent

"On demand, in writing, to the Home Office of the Company at any time, the Insured may borrow on the sole security of this Policy, the amount designated in Column Two of the Table of Guaranteed Values for the end of the Policy year previous to that in which the loan is taken, subject to interest, in advance, to the end of the current Policy year, at the rate of six per cent per annum. This Policy shall be assigned to the company as security according to the terms of the Company's loan agreement and the premiums hereon shall be paid in full to the anniversary of the Policy next succeeding the date when the loan shall be made. Any previous loan unpaid and accrued interest thereon shall be deducted from the total loan available hereunder at any time.

"Failure to repay any loan or interest thereon shall not avoid this policy until the total indebtedness hereon shall equal or exceed the total loan available.

"VII. Reinstatement of Policy

"At Any Time

"In case of default in the payment of any premium or interest, the Company will reinstate this Policy at any time, if not previously surrendered for its Cash Value, upon written application by the Insured to the Company at its Home Office with evidence of insurability satisfactory to the Company and the payment of all premiums that would have been paid in the intervening time if no default had been made, with interest thereon at the rate of six per cent per annum computed from the premium due date, and payment or re-instatement of any indebtedness existing at the time of default with interest at like rate.

"VIII. Change of Beneficiary

"At any time.

"The Insured hereunder reserves the right of revocation and change of Beneficiary, and if this Policy is not assigned, the Insured may, at any time while the same is in force, designate a new beneficiary by filing written notice thereof at the Home Office of the Company, accompanied by the Policy for suitable endorsement thereon. Such change shall take effect only upon approval of the application therefor by the Company and the endorsement of the same on the Policy. If there be no Beneficiary living at the death of the Insured, the proceeds of this Policy shall be paid to the Executors, Administrators or Assigns of the Insured.

"IX. Optional Settlements at the End of Twenty Years

"Accumulated Coupons

"If the Premium Reduction Coupons hereto attached are left with the Company for Twenty Years, the Insured hereunder paying all premiums in full, then at the end of Twen-

ty Years from date the Insured shall be entitled to the selection of any one of the following

"Optional Settlements:

"(Here follows an itemized statement of the accumulated values of the reduction coupons, in cash, loans, paid-up insurance, extended insurance in years and months at the end of each year for 20 years if the coupons are left with the company.)

"Third Page

"(Then follows a copy of each of the coupons referred to with guaranteed values thereof, in cash, loan, paid-up insurance, and extended insurance.)

"Fourth Page

"X. Premiums—How Payable

"Annually, Semi-annually, or Quarterly.

"(Then follows stipulations that the premiums are payable at the Home Office of the Company in Oklahoma City but may be paid to any agent authorized to receive the same in exchange for the Company's official receipt signed by the President or Secretary, with the further stipulation:

" 'Failure to pay any premium when due, or any note or interest thereon, given in payment of any premium on this Policy, except as herein otherwise provided, shall void this Policy and forfeit all premiums paid hereon to the Company and terminate and forfeit the Insured's right to pay any further premiums hereunder.')

"XI. General Provisions

"Entire Contract

"(1) This Policy constitutes the entire contract and the same cannot be varied or altered or its conditions waived or extended in any respect, except by the written agreement of the Company signed by the President or Secretary whose authority will not be delegated. The insurance hereby applied for shall not take effect unless the premium is paid and the policy delivered to and accepted by the Insured during his life time and good health.

"(Then follow stipulations with respect to misstatement of age of insured and terms upon which an assignment of the policy can be made and further that any indebtedness to the Company remaining unpaid will be deducted in any settlement of the Policy or any benefit thereunder; giving the right to the insured to control the policy without the consent of the beneficiary; and the method of computing the reserve on the policy during the first year it is in force.)

"When Special Benefits Not Applicable

"(7) The Special Benefits of Double Indemnity, Beneficiary Insurance, and Permanent Disability, shall not apply or be payable on any Policy which is automatically extended under the terms of Paragraph IV hereof, nor shall any such Special Benefits be included in any Paid-up Policy that may be issued in lieu of this Policy, as provided in Paragraph V or IX hereof.

"Basis

"(8) The Premiums and Guaranteed Values of this policy are computed on the basis of the American Experience Table of Mortality at the rate of three and one-half per cent per annum.

"(9) Statements made by the Insured in the application for this Policy shall, in the absence of fraud, be deemed representations not warranties.

"This Policy is issued in consideration of the payment of ($33.95) Thirty-Three & 95/100 Dollars in advance, before the same shall take effect, being the premium for term insurance for the first policy year, ending on the First day of April, 1913. After the first year the insurance will be continued as whole life insurance upon the payment of an annual premium of a like amount as the first, on or before the first day of April in every year during the continuance of this contract.

"Limited Installment Benefits

"The Insured may, at any time, change the mode of payment of the proceeds of this Policy as a death claim, if the policy is not then assigned, from payment in one sum, as provided on the first page, to payment by Annual Installments, as stated below; provided, that at the time of the death of the Insured, the proceeds of the Policy are One Thousand Dollars, or more. (Then follows a table of computing limited installments on the basis of $1,000.00 to be applied pro rata on the policy and stipulations that the insured may change the number of installments or revoke any change and make the proceeds of the policy payable in one sum.)

"If the Beneficiary shall survive the Insured and shall die before all installments have been duly paid, the remainder of the installments shall be commuted and paid in one sum to the Executors, Administrators or Assigns of the Beneficiary. * * *

"The Beneficiary can neither assign nor commute unpaid installments, unless such right is given to the Beneficiary by the Insured in writing, and is endorsed on this Policy by the Company at the Home Office, during the lifetime of the Insured. If, however, the proceeds of this Policy, or any part thereof, are payable to Executors, Administrators or Assigns, such proceeds shall be paid in one sum. * * *

"4 Special Benefits

"The expression '4 Special Benefits' across the face of the policy refers to the following provisions of the policy and none other (said provisions being available only while there is no default in payment of premiums):

"(1) Double Indemnity in case of the accidental death of the Insured.

"(2) Insurance of the Beneficiary for the face of the policy in the event of the accidental death of said Beneficiary, while riding in or on any vehicle or public or private conveyance.

"(3) Payment of the Disability Benefit in the face of the Policy in ten equal annual installments in the event of the Permanent and Total Disability of the Insured.

"(4) Immediate Payment of an amount not to exceed five per cent of the face of the policy upon the death of the insured.

"(Stamped:) Oct. 24, 1927

"Great Southern Life Insurance Company has made a loan to the owner of this policy, upon the sole security of the value of said Policy, and the sum so loaned, with interest thereon, is an indebtedness against and a lien upon the policy, and shall become due and payable and be satisfied as provided in the policy and in the loan agreement which the Company holds. Said Company has waived the deposit of the policy with it but its rights are not to be prejudiced by such waiver.
*　*　*

"Fifth Page

"Ordinary Life Policy    Guaranteed Premium Reduction
"Non-Participating    4 Special Benefits
"Policy No. 4325    Amount $1,000.00
"The Oklahoma National Life Insurance Company,
"Oklahoma City, U. S. A.
"The Insured Leonard H. Aldriedge, Age Thirty-nine years
"Premiums on this policy may be paid annually, semi-annually or quarterly, in advance at the option of the insured according to the following

"Table of Payments

Annually ........................ $33.95
Due on the 1st day of April
Semi-Annually .................. $17.66
Due on the 1st day of April and October
Quarterly ...................... $ 9.00
Due on the 1st day of April, July, October and January
"Notify Company of change of address."

On the 31st day of July, 1918, the Great Southern Life Insurance Company of Dallas, Tex., entered into the following agreement, with indorsements appearing thereon, with the Insured Leonard H. Aldriedge:

"Great Southern Life Insurance Company Dallas.
"No. 45376    Age 39
"Amount $1,000.00 (Cut of Great Southern Life Building, Dallas)    Premium $33.95
"Assumption of Policy Leonard H. Aldriedge St. Jo, Texas.

"Great Southern Life Insurance Company hereby reinsures and assumes all liability under Policy No. 4325 issued by the Oklahoma National Life Insurance Company, of Okla-homa City, Oklahoma, provided same was in force at midnight on the 31st day of July, 1918. This is done in conformity with a reinsurance contract between Great Southern Life Insurance Company and the Oklahoma National Life Insurance Company, of date July 19th, 1918, filed with and approved by the Insurance Departments of Oklahoma and Texas, and certified to by them as fully protecting the interest of all the policyholders of the Oklahoma National Life Insurance Company, of Oklahoma City, Oklahoma.

"In witness whereof, Great Southern Life Insurance Company has caused this assumption agreement to be signed by its authorized officers at its office in the City of Dallas, Texas, the 31st day of July, 1918.
F. S. Horbe,    O. S. Carlton,
　Ass't Secretary    President

"Endorsements of Insurance Commissioners of Oklahoma and Texas on Reinsurance Contract

" 'The above and foregoing reinsurance contract has been submitted to me and is hereby approved as protecting fully the interest of all the policy-holders of the Oklahoma National Life Insurance Company.'

"Austin, Texas, July 15, 1918.
　"[Signed]  Chas. V. Austin,
　　"Commissioner of Insurance and Banking of the State of Texas.
" 'The above and foregoing reinsurance contract has been submitted to me and is here-by approved as protecting fully the interest of all the policy-holders of the Oklahoma National Life Insurance Company.'
"Oklahoma City, Okla. July 23, 1918.
　"[Signed]  A. S. Welch
　　"Insurance Commissioner of the State of Oklahoma."

The record shows that Aldriedge assented to that contract of insurance and thereafter borrowed money from that company in accordance with the terms of the policy. Although the mailing of that contract to Aldriedge at St. Jo, Tex., where he received it, tended to show that he was then a resident citizen of Texas, no other proof was offered to show that fact.

Leonard H. Aldriedge, the insured, died as the result of an accident on May 25, 1931, and his death was preceded by the death of Polkey Aldriedge, the beneficiary named in the policy.

This suit was instituted by C. E. Cunningham, temporary administrator of the estate of Leonard H. Aldriedge, deceased, against the Great Southern Life Insurance Company to recover $2,000, the double indemnity provided for in the policy and also 12 per cent. penalty and attorney's fees provided for under the statutes of Texas. The defendant admitted liability in the sum of $1,000 and tendered that amount into court in full settle-

ment of plaintiff's claim, and judgment was rendered for that sum only.

This appeal has been prosecuted by the plaintiff from the action of the court in refusing a recovery for the additional sum of $1,000 and the penalty and attorney's fees; and whether or not he is entitled to that relief is the only question to be determined here.

The following agreement of counsel appears in the statement of facts:

"It is agreed that L. H. Aldriedge, the insured, died from accidental death on May 25, 1931, and that the plaintiff is the duly qualified and acting administrator of the estate of L. H. Aldriedge, deceased, under appointment of the Probate Court of Montague County, and on June 2nd, 1931, proof of death of the said L. H. Aldriedge was filed with the defendant, claiming the sum of $2,000.00 for accidental death under the terms of said policy, said policy being number 4325 issued by the Oklahoma National Life Insurance Company and assumed by the defendant under Assumption agreement No. 45376. That on June 26th, 1931, plaintiff made due and legal demand of the defendant for the payment of the sum of $2,000.00 under the terms of the policy, as claimed by the plaintiff. That payment thereof was refused and on the 18th day of August, 1931, this suit was filed herein for the $2,000.00 claimed by plaintiff and in addition thereto twelve per cent. penalty and $1,000.00 attorney's fees.

"That under date of October 21, 1927, the insured, Leonard H. Aldriedge, borrowed from the Great Southern Life Insurance Company the sum of $315.00, which said sum was paid by the Great Southern Life Insurance Company to the said Insured, Leonard H. Aldriedge, and of said date the said Leonard H. Aldriedge executed his policy loan note for the sum of $315.00, due on or before April 1, 1928, which note, among other things, provided for the payment of interest in advance on April 1, 1928, a correct copy of which is introduced and marked 'Exhibit 3.' It is further agreed that the said note was never paid and the interest due on April 1, 1930, was not paid and the premium of $33.95, due April 1, 1930, was never paid.

"That the policy was originally issued by the Oklahoma National Life Insurance Company, which was a corporation incorporated under the laws of Oklahoma and at the time of the issuance of said policy the insured was a citizen and resident of the State of Oklahoma.

"That at the time of the issuance of said policy and from that time up till now neither the statute law nor the common law of Oklahoma permitted the recovery of either attorney's fees or penalties against a life, health or accident insurance company as is sought to be recovered by the plaintiff in this case.

"The defendant introduced amendment to the charter of the Great Southern Life Insurance Company filed with the Secretary of State May 22nd, 1922, duly certified to by the Commissioner of Insurance and Banking, whereby the charter of the Great Southern Life Insurance Company was amended so as to permit the Company to do a life, health and accident insurance business, whereas theretofore its business had been limited to that of life insurance.

"Tender: The Great Southern Life Insurance Company has tendered today and delivered to the District Clerk its check for One Thousand Dollars ($1000.00) in tender of a thousand dollars, being the amount the insurance company admits its liability under this policy."

Article 5054, Rev. Statutes of 1925, reads: "Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed, and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same."

Article 4736, as amended by the 42d Legislature, p. 135, chapter 91 (Vernon's Ann. Civ. St. art. 4736), reads as follows: "In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent. damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy."

By that amendment the last two sentences were added. The rest of the provisions were included at the time defendant's contract was executed.

The case of Ætna Life Insurance Co. v. Dunken, 266 U. S. 399, 45 S. Ct. 129, 130, 69 L. Ed. 342, was a suit on a life insurance policy issued to Dunken while he was a resident citizen of Texas to replace an original policy issued to him while a resident citizen of the state of Tennessee. The original policy was a seven-year term policy with option to Dunken to convert the same into a

twenty-year payment commercial policy, which latter policy was the one sued on. Articles 5054 and 4736 (as it read before the amendment above noted) were relied on by the plaintiff. The Supreme Court held that those statutes could not be given effect.

One of the contentions of the insurance company was that the policy "was a Tennessee or Connecticut contract, and, since under the laws of those states no penalty or attorney's fee was recoverable, the Texas statute, as construed and applied, violates the contract-impairment clause, the full faith and credit clause, and the several clauses of section 1 of the Fourteenth Amendment of the federal Constitution." The court pointed out that "the new policy was delivered by an agent of the insurance company as a completed contract with the intention that it should become effective and binding from the time of its receipt by Dunken, and that such delivery as a completed contract was acquiesced in by an executive officer of the company." The court then said:

"The argument that the policy was not a Texas contract proceeds upon two grounds: (a) That the converted policy became effective, if it ever did, when it was mailed by the company's agent in Tennessee; (b) that the original policy was clearly a Tennessee or Connecticut contract, and the converted policy, being executed under the optional privilege granted by the original contract and in exact compliance with its terms, is a subsidiary and not an independent agreement, and the rights and obligations of the parties are controlled by the law of the original contract. * * *

"Whether a subsequent contract made in pursuance of the provisions of an earlier one is to be regarded as separate, detached and independent, or as a continuation and in effect the same, is a matter not always free from difficulty. The question as applied to substituted policies of insurance has not heretofore arisen in this court and apparently has seldom arisen in the state courts."

Then follows a reference to several decisions of state courts involving new policies issued in one state to take the place of original policies issued in other states. One of those cases is Dannhauser v. Wallenstein, 169 N. Y. 199, 208, 62 N. E. 160, and another was Silliman v. International L. Ins. Co., 131 Tenn. 303, L. R. A. 1915F, 707, 174 S. W. 1131. In each of those cases it was held that the new policy was not an independent contract, but was merely a continuation of the original contract, which was controlled by the law of the state of its issuance. Another case referred to was Gans v. Ætna L. Ins. Co., 214 N. Y. 326, 108 N. E. 443, L. R. A. 1915F, 703, in which it was held that the new policy was an independent contract, by reason of a provision in the new one which was not embodied in the original contract, and that therefore the law of the state in which the new was made controlled. The court then had this to say:

"While this court has not passed upon the precise question here presented, it had before it an analogous question in New York L. Ins. Co. v. Dodge, 246 U. S. 357, 62 L. Ed. 772, 38 S. Ct. 337, Ann. Cas. 1918E, 593, and Mutual L. Ins. Co. v. Liebing, 259 U. S. 209, 66 L. Ed. 900, 42 S. Ct. 467. The Dodge Case dealt with an insurance policy issued in Missouri to a resident and citizen of Missouri by a New York corporation with a Missouri license. The policy provided that 'cash loans can be obtained by the insured on the sole security of this policy on demand at any time after this policy has been in force two full years,' etc. It was provided that application for any loan should be in writing and that the loan would be subject to the terms of the company's loan agreement. Under this provision the insured procured a loan at the home office of the company in New York City, hypothecating the policy there as security. The loan agreement declared that it was made and to be performed in New York and under and pursuant to the laws of that state. Upon failure of the insured to pay a premium the entire reserve of the policy was applied to satisfy the loan and thereupon all obligation ceased under the provisions of New York law. The insured having died, suit was brought by the beneficiary upon the policy in reliance upon the Missouri nonforfeiture statute (Rev. Stats. 1899, § 7897), by the terms of which, unlike the New York statute, the insurance would have continued in force. This court held that while the policy was clearly a Missouri contract the loan agreement was an independent contract made in New York and subject to New York law. In the course of the opinion it is said (page 373 [of 246 U. S.], 38 S. Ct. 337, 339):

" 'It should be noted that the clause in the policy providing "cash loans can be obtained by the insured on the sole security of this policy on demand, etc.," certainly imposed no obligation upon the company to make such a loan if the Missouri statute applied and inhibited valid hypothecation of the reserve as security therefor as defendant in error maintains. She cannot, therefore, claim anything upon the theory that the loan contract actually consummated was one which the company had legally obligated itself to make upon demand.'

"The decision proceeds upon the theory that the provision in respect of loans did not constitute an absolute promise to make a loan upon simple demand at all events, and that the loan contract was an independent, subsequent agreement made in another state. In the Liebing Case, subsequently decided, the policy executed in Missouri provided that 'the company will * * * loan amounts within the limits of the cash surrender value,' etc.,

and this court, pointing out that the language of the policy in the Dodge Case was 'cash loans can be obtained, etc.,' said (pages 213, 214 [of 259 U. S.], 42 S. Ct. 467, 468):-

" 'The policy now sued upon contained a positive promise to make the loan if asked, whereas in the one last mentioned (the Dodge Case) it might be held that some discretion was reserved to the company.'

"In the light of these decisions, then, we inquire whether the second policy issued to Dunken is to be controlled by Tennessee or Texas law. The contract contained in the original policy was a Tennessee contract. The law of Tennessee entered into it and became a part of it. The Texas statute was incapable of being constitutionally applied to it since the effect of such application would be to regulate business outside the state of Texas and control contracts made by citizens of other states in disregard of their laws under which penalties and attorney's fees are not recoverable. New York L. Ins. Co. v. Head, 234 U. S. 149, 58 L. Ed. 1259, 34 S. Ct. 879; Overby v. Gordon, 177 U. S. 214, 222, 44 L. Ed. 741, 744, 20 S. Ct. 603. The second policy here was issued in pursuance of, and was dependent for its existence and its terms upon, the express provisions of the contract contained in the first one. By those provisions, upon the simple application of the insured, the new policy must issue. Nothing was left to future agreement. The terms of the new policy were fixed when the original policy was made. In effect, it is as though the first policy had provided that upon demand of the insured and payment of the stipulated increase in premiums that policy should, automatically, become a 20-payment life commercial policy. It was issued not as the result of any new negotiation or agreement but in discharge of pre-existing obligations. It merely fulfilled promises then outstanding; and did not arise from new or additional promises. The result in legal contemplation was not a novation but the consummation of an alternative specifically accorded by, and enforceable in virtue of, the original contract. If the insurance company had refused to issue the second policy upon demand, the insured could have compelled it by a suit in equity for specific performance. See Tayloe v. Merchants' F. Ins. Co., 9 How. 390, 405, 13 L. Ed. 187, 193.

"From these premises it necessarily results that the second policy follows the status of the first for which it was exchanged, and is not subject to the Texas statute relating to penalties and attorney's fees but is controlled by Tennessee law."

■ The defendant's contract with Aldriedge was an original independent undertaking to insure him in the same terms as those stipulated in the policy theretofore issued to him by the Oklahoma Life Insurance Company.

The legal effect of that contract was the same as though the defendant had issued a policy embodying the same terms as those in the original policy without reference thereto, and since it was consummated in the state of Texas it should be construed according to the laws of that state, in the absence of any agreement that the rights of the parties thereunder would be governed by the laws of the state of Oklahoma. Rue v. Mo. Pacific Ry., 74 Tex. 474, 8 S. W. 533, 15 Am. St. Rep. 852; Manhattan Life Ins. Co. v. Fields (Tex. Civ. App.) 26 S. W. 280; Franklin Ins. Co. v. Villeneuve, 25 Tex. Civ. App. 356, 60 S. W. 1014; Id., 29 Tex. Civ. App. 128, 68 S. W. 203, in which a writ of error was refused. To the same effect as the decisions last cited is the decision of the Court of Civil Appeals of Texas in Travelers' Ins. Co. v. Harris, 178 S. W. 816 (see paragraph 7 of the syllabus). And while that case was reversed by the Supreme Court on other grounds, it was expressly held that the Court of Appeals correctly disposed of all other questions. See Travelers' Ins. Co. v. Harris, 212 S. W. 933. And this would be true independently of the provisions of article 5054, above quoted. See, also, Fidelity Mutual Life Ass'n v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813; 6 Page on Law of Contracts, § 3566; 2 Colley's Brief on Insurance (2d Ed.) p. 1026; 6 R. C. L. p. 900, § 286.

■■ At the time of the execution of its contract, the defendant was doing business in the state of Texas under its charter as a life insurance company only, and having entered into the contract as such its liability thereunder was not changed by its amended charter procured some four years later, authorizing it to issue accident and health policies in addition to life insurance policies. Under the terms of defendant's contract, which was accepted by Aldriedge, he was bound to pay the premiums to the defendant instead of to the Oklahoma Life Insurance Company, and the defendant, in lieu of the Oklahoma Life Insurance Company, became obligated to pay him the benefits thereunder, and the act of the insured in paying the premiums to the defendant and exercising the right under its contract to borrow money thereon evidences that the insured looked solely to the defendant as the insurer with intention to release the Oklahoma Life Insurance Company of any liability under the policy issued by it. The facts just recited conclusively show a novation of the original contract of insurance by the Oklahoma Life Insurance Company. 20 Ruling Case Law, pages 359 to 375. It follows, therefore, that the decision in the Dunken Case is not controlling here because of the distinguishing facts involved. The Dodge Case, cited in the opinion in the Dunken Case, is applicable to the facts of this case in that the contract here sued on was an original

contract of the defendant to insure Aldriedge independently of the laws of the state of Oklahoma, applicable to the Oklahoma policy. And it is to be observed that in the Dunken Case and other cases cited by our Supreme Court the policies sought to be enforced were issued by the same companies that issued the original policies.

■ It is our conclusion, therefore, that the laws of the state of Oklahoma, which do not authorize the recovery of 12 per cent. damages with reasonable attorneys' fees for the enforcement of a contract of insurance as provided in article 4736, Rev. Statutes of Texas, did not preclude the right of recovery of such damages and attorneys' fees in this case. To the contrary, it is our conclusion that that statute should be given effect in this case as against the defendant.

Article 4716, Rev. Statutes, reads in part as follows: "A life insurance company shall be deemed to be a corporation doing business under any charter involving the payment of money or other thing of value, conditioned on the continuance or cessation of human life, or involving an insurance, guaranty, contract or pledge for the payment of endowments or annuities. An accident insurance company shall be deemed to be a corporation doing business under any charter involving the payment of money or other thing of value, conditioned upon the injury, disablement or death of persons resulting from traveling or general accidents by land or water."

Article 4733, Rev. Statutes, reads:

"No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company incorporated under the laws of this State, if it contains any of the following provisions: * * *

"3. A provision for any mode of settlement at maturity of less value than the amounts insured on the face of the policy, plus dividend additions, if any, less any indebtedness to the company on the policy, and less any premium that may, by the terms of the policy, be deducted. Any company may issue a policy promising a benefit less than the full benefit in case of the death of the insured by his own hand while sane or insane, or by following stated hazardous occupations. This provision shall not apply to purely accident and health policies. No foregoing provision relating to policy forms shall apply to policies issued in lieu of, or in exchange for, any other policies issued before July 10, 1909."

■ The claim of plaintiff that $2,000 as double indemnity was insured on the face of the policy, and by reason thereof it is collectable, notwithstanding the fact that the record shows that the policy was automatically extended for nonpayment of premiums and money borrowed, and notwithstanding the further fact that on page 4 of the policy it is provided that, if it is automatically extended, then the special benefits of double indemnity should not apply.

It is our conclusion that the provisions for double indemnity is one of the "amounts insured on the face of the policy," within the meaning of subdivision 3 of that article of the statute.

The policy that was signed by the president of the company expressed the contract of insurance in general terms. While it was stipulated therein that the other provisions shown in the four pages that followed after the signature of the president would be construed as a part of the contract, none of those added provisions would be discoverable without looking beyond the main body of the contract that was signed; and that, too, to the fourth of the added pages in order to discover the provision denying to the insured the right to double indemnity in the event of extended insurance. In Webster's New International Dictionary the following are among the definitions of the noun "face": "The surface of anything; esp. the front, upper or outer part or surface; that which particularly offers itself to the view of a spectator."

And among the definitions given in 25 C. J. 333, are: "That which is shown by the mere language employed without any explanation, modification, or addition from extrinsic facts or evidence, the principal sum which it expresses to be due or payable, without any additions in the way of interest and costs."

Another definition given in 2 Bouv. Law Dict. 1175, is: "The outward appearance or aspect of a thing. The words of a written paper in their apparent or obvious meaning, as, the face of a note, bill, bond, check, draft, judgment record or contract; * * * the face of a judgment for which it was rendered exclusive of interest."

See, also, 25 C. J. 333.

The syllabus of the decision of our Supreme Court in First Texas State Ins. Co. v. Smalley, 228 S. W. 550, also reported in 111 Tex. 68, reads: "A condition on the face of a life insurance policy immediately following the statement of the amount of the insurance, providing for payment of one-half only of such amount for death from certain diseases having their beginning during the first 12 months of the policy, is void under Rev. St. 1911, art. 4742, subd. 3, prohibiting provisions for settlement for less than the amounts insured on the face of the policy," etc.

■ We have concluded further that the contract of insurance sued on was not a purely accident and health policy within the meaning of the exception contained in subdivision 3 of article 4733, Rev. Statutes, as contended by appellee. Counsel for appellee stresses the opinion of the Texarkana Court of Civil Appeals in the case of Continental

Life Ins. Co. v. Johnson, 248 S. W. 88. As shown in that opinion the suit originated in the justice court and was instituted to recover claims aggregating $98.50 as sick benefits at the rate of $30 per month which in the policy was designated as "illness indemnity." There was another subdivision which limited the sick benefit to one-fourth of that amount if the illness resulted from certain diseases, including sciatica. The court said:

"The policy sued on was a combination contract, one which insured the life of the appellee and also contained what is termed an 'illness indemnity,' which stipulated that he was to be paid a sick benefit at the rate of $30 per month for a specified length of time. There was another subdivision, however, which limited the sick benefit to one-fourth of that amount, if the illness resulted from certain causes, or consisted of certain named diseases, among which was sciatica. The testimony of the attending physician showed that the appellee suffered from sciatica during the period named. There was other testimony which tended to show that his sickness was due to influenza.

"The only question in this appeal is: Did the court err in instructing the jury to find for the appellee the full amount of the indemnity claimed? The correctness of that decision must be determined by a construction of article 4742 [now article 4733] of the Revised Civil Statutes."

We quote further from that opinion: "It would be extremely technical to hold that, in order to escape the force of the inhibition against settlements for life insurance, the contract must contain no provision except those which relate to accident and health. If the provision invoked, in this instance, would be valid in a policy which was exclusively a health and accident contract, why should it not also be valid when embraced in a combination policy?"

The suit at bar is distinguished from that case in that it is a suit on the provision stipulating to pay indemnity for the death of the insured. In other words, it is a suit upon the life insurance provision of the contract and not merely for a sick indemnity. Furthermore, the provision for the payment of double indemnity in the event of the death of the insured through accident is nevertheless a life insurance policy which cannot be said of a contract insuring against illness. Other decisions cited by appellee as persuasive, although not directly in point, such as Dent v. National Life & Accident Ins. Co. (Tex. Civ. App.) 6 S.W.(2d) 195, and Hatton v. Mutual Health & Accident Ass'n (Tex. Civ. App.) 10 S.W.(2d) 239, have been examined, and without further discussion we think it sufficient to say that we do not believe they are necessarily in conflict with the views we have reached.

For the reasons indicated, the judgment of the trial court denying plaintiff a recovery for double indemnity with 12 per cent. additional as damages is reversed, and judgment is here rendered as of date September 10, 1932 —the date of the judgment in the trial court —in favor of appellant against appellee for double indemnity of $2,000 principal, plus 12 per cent. of that amount as additional damages; plus interest thereon at the rate of 6 per cent. per annum from July 8, 1931, the date of defendant's tender of $1,000, which was refused, up to the date of the judgment, amounting to $55, and plus $200 attorneys' fees, all aggregating the sum of $2,495. But said judgment will be now here credited with the sum of $1,000 as of date September 10, 1932, the date of the trial when it was taken down by appellant without prejudice to his right of appeal, as recited in the judgment and agreed to by counsel for appellee. The balance of the judgment as here rendered after allowing that credit will draw interest at the rate of 6 per cent. per annum from September 10, 1932. Judgment is also rendered in favor of appellant against appellee for all costs of suit in the trial court and in this court, for all of which he may have his execution.

The amount allowed for attorneys' fees above is the amount testified to by counsel for the defendant as being a reasonable fee. According to testimony of counsel for plaintiff, the only other witness on that issue, a reasonable fee for prosecuting plaintiff's suit would be not less than $300. There was no determination of that issue by the trial court, but since counsel for appellant has requested this court to determine that issue as a fact issue, to which suggestion counsel for appellee has made no reply, this court has fixed the fee at $200, to the end that the case may not be reversed merely to try that issue.