Forrest McCLUNEY, Appellee,

v.

JOS. SCHLITZ BREWING CO.,
Appellant.

No. 80–1383.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1981.

Decided May 20, 1981.

Rehearing and Rehearing En Banc
Denied June 30, 1981.
Rehearing Denied July 1, 1981.

Linde, Thomson, Fairchild, Langworthy & Kohn, Robert G. Oberlander (argued), J. Michael Vaughan, Kansas City, Mo., for appellee.

Gage & Tucker, Paul Scott Kelly Jr. (argued), James L. Moeller, Kansas City, Mo., for appellant.

Before GIBSON, Senior Circuit Judge, and HEANEY and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

The Jos. Schlitz Brewing Company appeals from a judgment pursuant to a jury verdict finding Schlitz liable for breach of an employment contract (Count I), and willful and malicious violation of the Missouri service letter statute, Mo.Ann.Stat. § 290.-140 (Count II). We affirm as to Count I and reverse as to Count II.

## I

In 1955, Forrest McCluney was a vice president for the Geo. Muehlbach Brewing Company in Kansas City, Missouri. Schlitz purchased Muehlbach in 1956 and hired McCluney as the industrial relations manager for its Kansas City plant; in 1962, Schlitz promoted McCluney to plant manager.

In 1970, Schlitz offered McCluney the position of plant manager at its Winston-Salem plant. That plant was considerably larger than the Kansas City plant. The promotion afforded him greater responsibility and promised a significant challenge. After weighing the competing benefits and burdens of accepting Schlitz's offer, he decided to accept it. Accordingly, he moved to North Carolina and started his new job. McCluney retained it for nearly five years.

In May, 1975, the executive vice president of Schlitz, Gene Peters, offered McCluney another promotion, the position of vice president of plant operations at Schlitz's corporate headquarters in Milwaukee, Wisconsin. This promotion promised McCluney even greater responsibilities, including overseeing corporate staff responsible for plant operations. A substantial salary increase was also part of the offer. McCluney accepted the offer for the challenge it presented and for the opportunity it offered to implement his management ideas. He moved to Wisconsin to begin his new job.

Once in Wisconsin, McCluney sought the transfer of his secretary, Lois Rinne, from Winston-Salem to Milwaukee. The company refused to transfer her, citing its formal management policy as the reason for the denial. McCluney asked Peters to make an exception in Ms. Rinne's case and push through the transfer. This request was also denied. McCluney persisted with his request, arguing to Peters that Schlitz's management policy was on shaky ground from a legal standpoint as it had a discriminatory impact on women employees. He told Peters that if an exception was not made for Ms. Rinne, there would "come a parting of the ways." Peters replied that if McCluney persisted, Schlitz would have to

demand his resignation. This confrontation took place on Friday, August 22, 1975. The next Monday, Peters asked McCluney if he had changed his mind. McCluney stated that he had not and Peters responded by asking for his resignation. McCluney retorted: "Oh no. When I resign, I will pick the time, and when you fire me, you will pick the time." Peters then instructed McCluney to clean out his desk. A replacement was subsequently named.[1]

Although Schlitz requested a letter of resignation from McCluney, he refused to tender one, reasoning in part that he would lose his severance pay if he did. Later that day, Schlitz issued a press release that stated McCluney had resigned. That release appeared in the Schlitz Management Bulletin and was reported in the Wall Street Journal, the Milwaukee Sentinel and the Twin City Sentinel (Winston-Salem). Three days after McCluney's termination, Schlitz sent McCluney a letter and enclosed a check as "final salary payment * * * following your resignation * * *." McCluney returned the check, denying that he had resigned.

A few months later, McCluney requested a service letter from Schlitz in the form provided for under Mo.Ann.Stat. § 290.140 (Vernon). Schlitz responded that McCluney had resigned. Thereafter, McCluney filed suit in the Circuit Court of Jackson County, Missouri, alleging breach of contract, violation of the Missouri service letter statute and libel. Schlitz removed the case to federal court. The libel claim was dismissed on Schlitz's motion for partial summary judgment, and no appeal was taken from that dismissal. McCluney's other claims were tried to a jury.

The basis of McCluney's service letter claim was that Schlitz's response was false and, therefore, actionable under Missouri law. The jury determined that Schlitz had, in fact, violated the Missouri service letter statute. It assessed nominal damages at $1.00 and punitive damages at $400,000. The basis of McCluney's contract claim for severance pay was a company directive issued by Schlitz's director of personnel, Robert Creviston. Creviston's Memorandum was sent to each of the brewery industrial relations managers. Under the Creviston Memorandum, McCluney was entitled to six months severance pay for a total of $32,500. McCluney asserted that the Creviston Memorandum merely put into writing what had been the Company's long standing practice, and that the Memorandum itself had been distributed to himself and people other than the brewery industrial relations managers. The jury determined that Schlitz had, in fact, breached its agreement to provide severance pay, and awarded McCluney $32,500.

## II

■ The United States Constitution limits the power of a forum state to apply its substantive law to factual and legal situations with which it has little or no contact. The constitutional bases for the limitation are found in the Due Process Clause, *Allstate Ins. Co. v. Hague,* —— U.S. ——, 101 S.Ct. 633, 637–638 & n.10, 66 L.Ed.2d 521 (1981); *Clay v. Sun Ins. Office, Ltd.,* 377 U.S. 179, 180–181, 84 S.Ct. 1197, 1198, 12 L.Ed.2d 229 (1964); *Home Insurance Co. v. Dick,* 281 U.S. 397, 407–410, 50 S.Ct. 338, 341–312, 74 L.Ed. 926 (1930), and the Full Faith and Credit Clause.[2] *Allstate Ins. Co.*

1. A central issue at the trial was whether McCluney had voluntarily resigned or was dismissed involuntarily. The jury determined that McCluney's termination was involuntary. The evidence clearly supports that finding and we will not disturb it on appeal.

2. The Supreme Court has recently suggested that the two constitutional provisions are operatively identical when a state applies its substantive laws extraterritorially. *Allstate Ins. Co. v. Hague,* 101 S.Ct. 633, 637–638 & n.10 (1981). Mr. Justice Stevens, concurring in the

result and thus creating a majority, reasoned, however, that the conceptual framework of the two clauses are different and, therefore, proper analysis under either must necessarily be logically distinct. *Id.* at 644–645. *See generally* R. Leflar, American Conflicts Law §§ 55–62 (1977); R. Weintraub, Commentary on the Conflict of Laws, § 9.2A (1980); Kirgis, *The Roles of Due Process and Full Faith and Credit in Choice of Law,* 62 Cornell L.Rev. 94, 95–128 (1976); Leflar, *A Response from the Author,* 34 Ark.L.Rev. 243, 245–250 (1980); Martin, *Constitutional Limitations on Choice of Law,* 61

*v. Hague, supra*, 101 S.Ct. at 637–638 & n.10; *Clay v. Sun Ins. Office, Ltd., supra*, 377 U.S. at 180–181, 84 S.Ct. 1197–1198; *John Hancock Mutual Life Ins. Co. v. Yates*, 299 U.S. 178, 181–183, 57 S.Ct. 129, 131–132, 81 L.Ed. 106 (1936); *Aetna Life Ins. Co. v. Dunken*, 266 U.S. 389, 393, 45 S.Ct. 129, 130, 69 L.Ed. 342 (1924).

Until recently, it was unclear whether the due process limitation upon a state's extraterritorial application of law mirrored the due process analysis for determining the limits of a state court's judicial jurisdiction. The concepts are closely linked, and commentators have suggested that essentially the same principle should be applied with reference to both situations. *See* Martin, *Personal Jurisdiction and Choice of Law*, 78 Mich.L.Rev. 872, 872–873 (1980); Reese, *Legislative Jurisdiction*, 78 Colum.L.Rev. 1587, 1591 (1978); Reese, *Limitations on the Extraterritorial Application of Law*, 4 Dalhousie L.J. 589, 593 (1978). It seems that the question has been answered by the Supreme Court in *Allstate Ins. Co. v. Hague, supra*. In *Hague*, the Court stated that

> for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interest, such that choice of its law is neither arbitrary nor fundamentally unfair.

101 S.Ct. at 640.

■ *Hague* is consistent with the Court's earlier legislative jurisdiction cases and its more recent decisions in the area of judicial jurisdiction.[3] The basic rule is the state whose law is chosen to control a case must have a substantial factual contact with the parties or the transaction giving rise to the litigation. Without sufficient contacts, the state has no legitimate interest in the outcome of the litigation. *See Allstate Ins. Co. v. Hague, supra*, 101 S.Ct. at 640; *Clay v. Sun Ins. Office, Ltd., supra*, 377 U.S. at 181–183, 84 S.Ct. 1198–1199; *Richards v. United States*, 369 U.S. 1, 15, 82 S.Ct. 585, 594, 7 L.Ed.2d 492 (1962); *Home Ins. Co. v. Dick, supra*, 281 U.S. at 407–408, 50 S.Ct. 341. *See also* R. Leflar, American Conflicts Law § 58 at 112 (1977).

The Court's decisions can be explained on the basis of the contacts in each case. In *Yates* and *Dick*, the Court ruled that the states involved had only an insignificant contact with the parties or the cause of action and, therefore, application of the states' laws was unconstitutional. *Dick* says nominal residence alone is not enough. *Yates* says post-occurrence change of residence to the forum state alone is not enough. *See Allstate Ins. Co. v. Hague, supra*, 101 S.Ct. at 639. On the other hand, the Supreme Court has found sufficient contacts to permit the extraterritorial application of the law of the forum state in a number of instances.

(1) When an employment contract was executed in California for work to be performed outstate and the employer, who was doing business in California, agreed to transport the worker outstate and bring him back again when the work was finished, California law was properly applied to a suit arising out of the employment relationship. *See Alaska Packers Ass'n v. Industrial Acc. Comm'n*, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935).

(2) When a District of Columbia company employed a D.C. resident to work in Virginia for a time certain, and when the employee commuted from his home to work and was classified by the company as an employee who performed electrical construc-

---

Cornell L.Rev. 185, 186–201 (1976); Reese, *Legislative Jurisdiction*, 78 Colum.L.Rev. 1587–1591 (1978); Reese, *Limitations on the Extraterritorial Application of Law*, 4 Dalhousie L.J. 589, 589–590 (1978).

The parties in the present appeal submitted the case as a due process question. Since we determine that the extraterritorial application of the Missouri service letter statute to the facts of this case violates due process, we need not and do not address the question under the Full Faith and Credit Clause.

3. Legislative jurisdiction does not denote simply the lawmaking power of a state; rather it refers to the power of a state to *apply* its laws to any given set of facts. Judicial jurisdiction, in contrast, is the power of a state to *try* a particular action in its courts.

tion work in the District and its surrounding areas, the law of the District was properly applied to a dispute arising out of an accident that occurred in Virginia. *See Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 67 S.Ct. 391, 91 L.Ed. 1028 (1947).

(3) When an insurance policy that was issued in Illinois guaranteeing nationwide coverage was coupled with property loss in Florida, the presence of the insurance company in Florida, and the plaintiff's residence in Florida, application of Florida law was permissible in a suit on the insurance contract. *See Clay v. Sun Ins. Office, Ltd., supra*, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229.

(4) When a Wisconsin resident commuting to work in Minnesota on a daily basis was injured in a highway accident in Wisconsin, and when he later moved to Minnesota, Minnesota law was properly applied to a suit against an insurance company, present and doing business in Minnesota. *See Allstate Ins. Co. v. Hague, supra*, 101 S.Ct. 633.

 The Court's "significant contacts" analysis addresses the traditional concerns of due process: preventing unfairness to the parties and promoting healthier interstate relations. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–292, 100 S.Ct. 559, 564–565, 62 L.Ed.2d 490 (1980); Martin, *Personal Jurisdiction and Choice of Law*, 78 Mich.L.Rev. 872, 879 (1980); Reese, *Legislative Jurisdiction*, 78 Colum.L.Rev. 1587, 1591–1592 (1978). When parties' expectations are rationally based upon one state's laws, or in the negative, when their rational expectations are *not* based upon the laws of some other state, it violates due process to breach those expectations by applying the unexpected law. When the forum's contacts with the parties or the transaction satisfy the Court's "significant contacts" test, however,

it follows, necessarily, that no party may "reasonably" expect that the forum state's law cannot control the case. In such a situation, the forum state's *power* to apply its own law is unquestionable.[4]

 The Court's "contacts" analysis cannot be explained by considerations of fairness to the parties alone. When a state's law is applied to a transaction with which the state has no significant contact, it infringes upon the legitimate interests that other states may have in the transaction; this infringement is not reasonable—in a due process sense—within the context of our federal system of government. *Cf. World-Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. at 291–292, 100 S.Ct. at 564–565 (judicial jurisdiction); *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958) (judicial jurisdiction); *New York Life Ins. Co. v. Head*, 234 U.S. 149, 160–161, 34 S.Ct. 879, 880–881, 58 L.Ed. 1259 (1914) (legislative jurisdiction); *Alton v. Alton*, 207 F.2d 667, 677 (3rd Cir. 1953) (legislative jurisdiction), *vacated on mootness grounds*, 347 U.S. 610, 74 S.Ct. 736, 98 L.Ed. 987 (1954). *See generally* Kirgis, *The Roles of Due Process and Full Faith and Credit in Choice of Law*, 62 Cornell L.Rev. 94, 95–97 (1976); Reese, *Legislative Jurisdiction*, 78 Colum.L.Rev. 1587, 1599–1607 (1978); Reese, *Limitations on the Extraterritorial Application of Law*, 4 Dalhousie L.J. 589, 593, 599–602 (1978); Note, *The Minnesota Supreme Court: 1979—Conflicts of Law*, 64 Minn.L.Rev. 1181, 1189–1191 (1980).

The relevant contacts in this case can be simply stated. The employment contract, *i. e.*, McCluney's promotion to vice president of plant operations, was arranged in North Carolina and Wisconsin; and it was performed in Wisconsin. At the time of performance, McCluney was a Wisconsin resi-

---

**4.** Sufficient contacts constitutionally empower a state to apply its laws. Of course, general conflict of laws principles of the forum state may well dictate the application of another state's law. The Supreme Court has stated that "[w]here more than one State has sufficiently substantial contact with the activity in question, the forum State, by analysis of the interests possessed by the States involved, could constitutionally apply to the decision of the case the law of one or another state having such an interest in the multistate activity." *Richards v. United States*, 369 U.S. 1, 15, 82 S.Ct. 585, 594, 7 L.Ed.2d 492 (1962).

dent. At all times, Schlitz was a Wisconsin corporation. The termination of McCluney's employment occurred in Wisconsin. McCluney returned to North Carolina after his termination from Schlitz; it was while he was in North Carolina that he requested a service letter "in the form provided for" under Mo.Ann.Stat. § 290.140. After McCluney received his service letter from Schlitz, he moved to Missouri and instituted this action.

Apart from McCluney's post-termination move to Missouri, he had had no real contact with that state for five years. Schlitz closed its Kansas City plant in September, 1973, and sold the plant in December, 1973, nearly two years prior to McCluney's termination. Although Schlitz sells its beer f. o. b. Schlitz's plant dock to its distributors, and some of Schlitz's distributors are located in Missouri, Schlitz has performed no manufacturing or processing operations in Missouri since September, 1973.

The Supreme Court has recently stated that a plaintiff's *bona fide* "post-occurrence" change of residence to the forum state is a relevant contact that must be assessed in determining whether a forum's application of its state law is constitutionally permissible. *Allstate Ins. Co. v. Hague, supra,* 101 S.Ct. at 643–644. The Court in *Hague,* however, reaffirmed the rule in *John Hancock Mutual Life Ins. Co. v. Yates, supra,* that post-occurrence change of residence alone is not sufficient to create a "significant contact." *Allstate Ins. Co. v. Hague, supra,* 101 S.Ct. at 639 & 643.

McCluney asserts that his original hiring in Missouri in 1956 constitutes a significant contact with the forum state. McCluney relies upon a recent Missouri appellate court decision that applied the service letter statute to an employment contract performed in part in Missouri and in part in several other states over a two-year period. In *Bliven v. Brunswick Corp.,* 575 S.W.2d 788 (Mo.App.1978), the plaintiff was hired by the Brunswick Corporation to manage a bowling alley in Gladstone, Missouri. In the course of his employment, the plaintiff was transferred to a bowling alley in New

Orleans, Louisiana, for five months; a bowling alley in Council Bluffs, Iowa, for two months; and a bowling alley in Wichita, Kansas, for eight months. The Missouri Court of Appeals ruled that the service letter statute applied to a discharge that occurred in Kansas.

McCluney's argument stands or falls upon his contention that the employment contract was originally entered into in Missouri in 1956, and thereupon became fixed and immutable. McCluney's "once a king always a king" argument is unpersuasive. Although it is not entirely clear from the court's opinion, it would appear that the plaintiff in *Bliven* performed essentially the same employment function in each facility, and the court characterized the involuntary transfers as part and parcel of the original contract. Moreover, the short duration of employment in each facility highlights the transient nature of Bliven's employment for the fifteen months he worked outside Missouri. By contrast, we hold that McCluney's 1956 contract was discharged in 1970 when he accepted Schlitz's offer of a promotion to plant manager of the Winston-Salem Plant. That 1970 contract was, likewise, discharged when McCluney accepted Schlitz's offer of a promotion to vice president of plant operations in Wisconsin in 1975. The 1975 contract is twice removed from the original 1956 Missouri contract. Moreover, it is this twice removed contract upon which McCluney bases his severance pay claim; his contract claim is for six months salary of a corporate vice president in Wisconsin, not the plant manager's salary for Schlitz's defunct Kansas City plant. The simple fact that McCluney was originally hired in Missouri, in the light of his subsequent employment history with Schlitz, is not controlling. This suit is not upon a Missouri contract.

In the instant case then, there is only one relevant contact between the Missouri forum and this transaction: McCluney's post-termination change of residence to that state. Standing alone, that is not sufficient to permit Missouri law to affect a Wisconsin contract entered into between

two Wisconsin residents and which is to be performed in Wisconsin. Neither party could reasonably expect that the Missouri letter statute would alter their employment contract. Moreover, the application of Missouri law to an employment arrangement which only has contacts in Wisconsin constitutes an infringement of the interest Wisconsin has in overseeing contractual arrangements entered into and performed within its territorial boundaries. Accordingly, that portion of the judgment awarding McCluney $400,001 under the Missouri service letter statute must be vacated.[5]

### III

■ After careful review of the trial transcript and the record of the district court, we are convinced that McCluney's contract claim was properly submitted to the jury. Schlitz's central argument is that since the Creviston Memorandum was never formally recorded in its Policy Manual and never sent to McCluney through the company's normal channels, it could not form the basis of a contract claim suitable for jury consideration.

The record, however, clearly shows that the Creviston Memorandum was in fact a codification of the termination procedure that had been Schlitz's long established practice. The Creviston Memorandum was drafted with the consultation and approval of Schlitz's vice president of industrial relations, and it was sent to the brewery industrial relations managers for them to implement. The record supports McCluney's claim that the company's severance pay policy was known throughout the work place, and that the Creviston Memorandum itself was circulated among salaried personnel other than the brewery industrial relations managers. The trial court correctly submitted the severance pay claim to the jury

and the evidence fully supports the jury's finding of liability.[6]

That portion of the judgment below awarding damages on the basis of the Missouri service statute is vacated. That portion of the judgment awarding damages for breach of contract is affirmed. Each party shall bear its own costs.

ARNOLD, Circuit Judge, concurring in part and dissenting in part.

I agree that the judgment for breach of contract should be affirmed. But because I believe that application of the Missouri service-letter statute to this case would not deprive Schlitz of property without due process of law, I respectfully dissent from Part II of the Court's opinion.

In *Allstate Ins. Co. v. Hague*, 101 S.Ct. 633 (1981), a motorcycle driven by a resident of Wisconsin was struck from behind by an automobile driven by another resident of Wisconsin. The accident occurred in Wisconsin. Ralph Hague, also a resident of Wisconsin and a passenger on the motorcycle, was killed. Hague's widow sued Allstate on a contract of insurance which had been delivered in Wisconsin. The Supreme Court held that the application of Minnesota law to the question of how to construe the insurance policy did not deprive Allstate of property without due process of law.[1] Hague had worked in Minnesota for 15 years before the accident, and commuted each day to his job in that State (though the accident did not occur while Hague was commuting to work). Allstate was at all times present and doing business in Minnesota (as, indeed, it was in Wisconsin). After the accident, but before bringing suit, Mrs. Hague moved to Minnesota. Four jus-

---

5. Based upon our ruling, we need not and do not address Schlitz's alternative arguments relating to McCluney's service letter statute claim.

6. We have considered and rejected Schlitz's arguments regarding the trial court's admitting alleged hearsay testimony and other testimony without proper foundation. After a careful re-

view of the record, we are convinced that the trial court correctly overruled Schlitz's objections.

1. The Court also held that there was no violation of the Full Faith and Credit Clause, U.S. Const., Art. IV, § 1. Schlitz has not made a full-faith-and-credit argument in this case.

tices[2] took the view that these three contacts with Minnesota were sufficiently significant to allow the Minnesota courts to apply their own law without violating the federal Constitution. Mr. Justice Stevens, concurring in the judgment,[3] thought that "the plaintiff's post-accident move to Minnesota and the decedent's Minnesota employment"[4] were at best irrelevant. He voted to uphold the application of Minnesota law against the due-process challenge, however, because in his view that outcome did "not frustrate the reasonable expectations of the contracting parties,"[5] nor cause "unfair surprise to a litigant."[6]

Under the criteria either of the plurality opinion or the concurring opinion of Stevens, J., the relationship between Missouri and this case seems to me no more tenuous than the relationship between Minnesota and Mrs. Hague's case. In both cases there was a post-occurrence move of the plaintiff to the forum State. In neither case is it claimed that the move was for the purpose of securing either a particular forum or a particular rule of law. In both cases the corporate defendant did business in the forum State at all relevant times. It is true that Schlitz has done no manufacturing or processing in Missouri since 1973, but it has continuously had distributors and sales and marketing employees in Missouri. There can be no doubt that Schlitz is amenable to suit in Missouri, and it has never claimed to the contrary, not in the Circuit Court of Jackson County, Missouri, where this action was brought by McCluney, not in the District Court, to which Schlitz removed the case, and not in this Court.[7] And the employment relationship between McCluney and Missouri is much more relevant for choice-of-law purposes than the employment relationship between Hague and Minnesota. Hague's accident has nothing to do with his employment, and neither did his insurance policy. By contrast, the Missouri service-letter statute, as construed by the Supreme Court of Missouri, became part of McCluney's contract when he was employed by Schlitz in Missouri in 1956. See *Cheek v. Prudential Life Ins. Co.*, 192 S.W. 387, 393 (Mo.1916), *aff'd after trial*, 259 U.S. 530, 42 S.Ct. 516, 66 L.Ed. 1044 (1922).

The Court's conclusion that Missouri is without power to apply its statute to this case hinges on the theory that McCluney's original employment contract, under which he worked in Missouri for 14 years, from 1956 to 1970, was "discharged," *ante*, p. 583, when he moved to North Carolina to manage the Winston-Salem plant. With all deference, this argument seems to me rather artificial, the kind of thing lawyers and scholars think up after the fact, rather than a consideration actually present in the minds of the parties when McCluney decided to accept Schlitz's offers of promotion. At least some aspects of the employment relationship typically survive an employee's transfer from one city to another by a nation-wide corporate employer. In this case, for example, McCluney's right to severance pay, which the Court upholds, although based on his rate of pay in his last position, the vice-presidency in Wisconsin, was also based on his almost 20 years of service with the company, most of which took place in Missouri. Probably neither

---

2. Mr. Justice Brennan, joined by three other Members of the Court, announced the Court's judgment and delivered the plurality opinion.

3. 101 S.Ct. at 644.

4. *Id.* at 649–50.

5. *Id.* at 649.

6. *Id.* at 648.

7. Though the concepts of judicial jurisdiction (amenability to suit) and legislative jurisdiction (choice of law) are distinct, they are admittedly closely related. See the Court's discussion of the two concepts, *ante*, slip op. at 5–6. Some observations in the *Hague* plurality opinion apply here: "Here, of course, jurisdiction in the Minnesota courts is unquestioned, a factor not without significance in assessing the constitutionality of Minnesota's choice of its own substantive law." *Allstate Ins. Co. v. Hague, supra*, 101 S.Ct. at 642 n.23. "By virtue of its presence, Allstate can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved." *Id.* at 642–43.

Schlitz nor McCluney had any conscious intention with respect to the continued applicability of the Missouri service-letter statute when McCluney moved to North Carolina. I cannot see how any expectation of Schlitz would be disappointed by holding that the statute continued to be a part of the employment agreement. The statute in terms applies "*[w]henever* any employee of any corporation doing business in this state shall be discharged or voluntarily quit ...," Mo.Ann.Stat. § 290.140 (1975) (emphasis supplied). Schlitz was doing business in Missouri both when it hired McCluney, and when it fired him. It would be fanciful to contend that Schlitz somehow changed its position, with respect to potential future service-letter liability, when McCluney moved out of Missouri. The most telling fact of all, so far as fairness to Schlitz is concerned, is that it responded almost at once, and without a murmur, to McCluney's request for a service letter under Missouri law. Apparently the claim that Missouri law applied was no surprise to Schlitz at that point. It was not until the company was sued, consulted counsel, and began casting about for defenses, that Schlitz asserted that application of Missouri law was so unexpected as to be fundamentally unfair.[8]

The Court discusses two cases in which the Supreme Court has invalidated a state's choice of law. Both are crucially different from this case. In *Home Ins. Co. v. Dick*, 281 U.S. 397, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1930), the parties had expressly contracted for the application of Mexican law, but Texas courts had attempted to apply Texas law. And in *John Hancock Ins. Co. v. Yates*, 299 U.S. 178, 182, 57 S.Ct. 129, 131, 81 L.Ed. 106 (1936), the only contact with the forum was the plaintiff's post-occurrence change of residence, and the Court

struck down the application of Georgia law to an insurance policy which.it construed to incorporate New York law as "a term of the contract ...." Here, on the contrary, Schlitz's and McCluney's original agreement included the Missouri statute, and no later agreement expressly modified that arrangement. Schlitz could have bargained with McCluney for an express choice-of-law clause to extinguish any potential service-letter liability. The lack of such an express choice-of-law agreement has been referred to by the Supreme Court as a factor supporting a forum state's choice of its own law. *Clay v. Sun Ins. Office, Ltd.*, 377 U.S. 179, 182, 84 S.Ct. 1197, 1198, 12 L.Ed.2d 229 (1964). I cannot help feeling that this Court's decision harks back to a day when the federal courts were too ready to enshrine their own notions of proper conflicts rules in the Due Process Clause of the Fourteenth Amendment. It may be significant that the Court cites no case (and I know of none in the Supreme Court) more recent than 1936 striking down a state's choice of law under the federal Constitution.

In sum, I would affirm the District Court's decision that the Missouri service-letter statute may validly be applied, and the judgment on Count II of the complaint, but only to the extent that it awarded nominal damages of $1.00. I cannot bring myself to approve the award of $400,000.00 in punitive damages on these facts. The service letter, though false, was not defamatory, nor was it published by Schlitz to anyone except the plaintiff himself. McCluney's actual damages are covered by the judgment on Count I. The award of punitive damages is so large that it seems to have been the product rather of anger than of properly righteous indignation. Thus, although I differ from the Court's

---

8. I have concentrated on the question of unfairness to. Schlitz because the Court does not appear to contend that there would be any real encroachment on Wisconsin's interests in applying Missouri law here. Wisconsin has no service-letter statute, but it does prohibit a combination of employers from acting to deny employment to persons seeking it, Wis.Stat. Ann. § 134.02 (West 1974). Wisconsin is thus no more hospitable to blacklisting (the evil against which the service-letter statute is directed) than Missouri is. It simply chooses a different method to attack the problem. By contrast, in *Hague* Minnesota and Wisconsin had directly opposite rules of decisional law on the insurance question at issue, and still the application of Minnesota law was upheld.

legal analysis, I agree with all but one dollar of the result.