Donald L. BIGHAM,
Plaintiff-Respondent,

v.

McCALL SERVICE STATIONS, INC.,
Defendant-Appellant.

No. WD 32479.

Missouri Court of Appeals,
Western District.

June 8, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 3, 1982.

Application to Transfer Denied
Sept. 13, 1982.

John G. Killiger, Kansas City, S. Preston Williams, Thomas E. Barzee, Jr., North Kansas City, for defendant-appellant.

Daniel M. Czamanske, Riverside, for plaintiff-respondent.

Before SOMERVILLE, C. J., and WASSERSTROM and LOWENSTEIN, JJ.

WASSERSTROM, Judge.

Plaintiff Donald L. Bigham sued to recover deductions from his wages made by McCall Service Stations, Inc. in alleged violation of Section 44–319, Kan.Stat.Ann. The trial court entered judgment on a jury award of $1,459.47 actual damages and $168,750.00 punitive damages, from which defendant appeals. We reverse.

McCall, a Kansas corporation duly qualified to do business in Missouri, is engaged in the operation of retail gasoline service stations, and maintains its principal business offices in Missouri. It has seven stations located in Kansas and nine stations in Missouri. In November 1971, Bigham, a resident of Missouri, began work for McCall as an attendant at the McCall station in Quindaro, Kansas.[1] After seven or ten weeks he transferred to the McCall station in Riverside, Missouri, where he worked for one year. Then he was transferred successively to two other McCall Missouri stations for short periods. He then returned to work at the Riverside station where he became the manager in January 1974.

At that time, McCall had an established policy and practice with respect to station managers. There were two managers at each station for each of two separate shifts. The two managers signed a memorandum to the company jointly assuming responsibility for $400 delivered to them by McCall for the purpose of making change. Each manager was liable for any cash shortages and was given credit for any overages which occurred during his shift. Each manager was liable for any bad checks accepted during his shift and also for the giving of any credit on credit cards as to which the credit card company had given notice that further credit should not be extended. In consideration for those additional duties and responsibilities, the supervisors were paid higher salaries than attendants and the managers each also received a bonus based on the amount of gallonage sold at the station. In addition, McCall permitted the managers to operate the business of selling cigarettes at the station, the profits from

1. The record does not disclose how or where Bigham's hiring was negotiated.

which belonged to the managers; the company advanced the amount of cigarette taxes and then charged the amount of the taxes to the respective managers. Bigham was fully aware of the foregoing practices and rules at the time he accepted the promotion to manager.[2]

After Bigham became a manager in 1974, McCall made a number of deductions from his salary because of bad checks and the giving of credit on posted credit cards, aggregating for the year $806.75.[3] In addition, McCall deducted amounts as "short in station" aggregating for the year $652.72. The total of those two categories for the year 1974 came to $1,459.47.

Bigham remonstrated with his supervisor concerning the amount of these deductions. His supervisor replied that Bigham had assumed the liabilities with the promotion and therefore had to put up with it or quit. Bigham did quit in November of 1974 and instituted this suit against McCall in March 1975. The suit was tried and submitted to the jury on the theory that the deductions in question violated Section 44–319, Kan. Stat.Ann., which provides as follows:

"Withholding of wages. (a) No employer may withhold, deduct or divert any portion of an employee's wages unless: (1) The employer is required or empowered to do so by state or federal law; (2) the deductions are for medical, surgical or hospital care or service, without financial benefit to the employer, and are openly, clearly and in due course recorded in the employer's books; or (3) the employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee.

* * * "

On this appeal, McCall raises six points. The first of those points makes the fundamental contention that Section 44–319, upon which Bigham rests his case, has no application under the facts here. Because we rule that point in favor of McCall, and because that point disposes of the whole case, it becomes unnecessary to discuss or rule upon any of McCall's other points.

■ The starting point for a discussion of the issues presented must be the legal proposition that the statute of a state does not ordinarily have any extra-territorial effect. The rule in this regard was stated in *Horstman v. General Electric Company*, 438 S.W.2d 18, 20 (Mo.App.1969), as follows:

" ' "Prima facie, every statute is confined in its operation to persons, property, rights, or contracts, which are within the territorial jurisdiction of the Legislature which enacted it. The presumption is always against any intention to attempt giving to the act an extra-territorial operation and effect." '; and citing *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95. ' "No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived." ' "

To the same effect: *Stanley v. Wabash, St. L. & P. Ry. Co.*, 100 Mo. 435, 13 S.W. 709 (1890); *State v. Stanley*, 104 Kan. 475, 179 P. 361 (1919); 73 Am.Jur.2d Statutes Section 357 (1974).[4]

---

**2.** The record shows that some deductions were made from Bigham's salary in 1972 and the early part of 1973 for items which were marked "credit card," "checks" and "shortage in station." No explanation appears in the record explaining anything about these early deductions or how they came to be made. In any event, the briefs in this court are in agreement that in 1974—which is the only period directly here in suit—the company policy and practice was to look to and charge each manager for all shortages, bad checks and posted credit cards which occurred during the shift for which that manager was responsible. The manager had the right to hire and fire the attendants, and in that way the manager was in a position to control the attendants who worked on his shift.

**3.** Bigham was able to collect back from the customers some of these items which were charged to him by McCall, but Bigham was unable to say how much he was able to so collect.

**4.** McCall relies also on a separate legal principle that the forum state will not enforce a penal statute of another state. McCall insists that Section 44–319 is penal because another section of the Kansas Statutes, Section 44–323(a), makes willful violation a misdemeanor. Big-

While not denying the foregoing principle against extra-territoriality, Bigham argues that this case comes within certain exceptions to or variations upon that doctrine. His first and major reliance is upon the rule of "lex loci contractus" under which the laws which exist at the time and place of making a contract, and at the place where it is to be performed, affecting its validity, construction, enforcement, termination and discharge, enter into and form a part of the contract as if they were expressly referred to or incorporated therein. *Bliven v. Brunswick Corp.*, 575 S.W.2d 788, 790–791 (Mo.App.1978) and cases therein cited.

█ That principle has no pertinence here. The original employment contract under which Bigham commenced work in Kansas occurred in 1971. Section 44–319 did not go into effect until July 1973. Therefore the 1971 contract could not have incorporated a statute which was not enacted until more than a year and a half later. Moreover, by the time the statute in question did go into effect, the contract of employment was no longer being performed in Kansas.

Bigham relies very heavily on the opinion of this court in *Bliven v. Brunswick Corp.*, *supra*. In that case Bliven, a Missouri resident, was employed in Missouri to serve as the manager of a bowling alley in Missouri. After so serving for nine months, he was transferred to Louisiana for five months, then to Iowa for two months, and then to Kansas for eight months. Bliven was then terminated and demanded a service letter which was not given. He brought suit in Missouri on the Missouri service letter statute. This court held that the case came within the Missouri statute despite the various transfers and discharge out-state.

The present case, however, is more nearly like *McCluney v. Jos. Schlitz Brewing Co.*, 649 F.2d 578 (8th Cir. 1981) which discusses and distinguishes *Bliven*.[5] McCluney had been hired as an industrial relations manager of the Schlitz Kansas City plant in 1956. In 1970 he was transferred and promoted to manager in a Schlitz North Carolina plant where he served for five years. In 1975 he received another promotion to vice president of plant operations and was transferred to Wisconsin. Shortly thereafter a disagreement arose between the parties which led to his termination. McCluney demanded a service letter under the Missouri service letter statute, and after receiving one he filed suit for damages. The court held that the application of the Missouri statute to the facts of *McCluney* would violate due process under an analysis showing that Missouri had no significant contact to the matter in controversy. The court pointed out that McCluney's promotion to his last position was arranged in North Carolina and Wisconsin and was performed in Wisconsin. Furthermore, Mr. McCluney was then a resident of Wisconsin, the employer was a Wisconsin corporation, the termination occurred in Wisconsin, and McCluney had had no contact with Missouri for five years up to the time of termination. The court distinguishes *Bliven* on the grounds that Bliven had done essentially the same duties after his various transfers and those transfers were all of relatively short durations. The court held that to the contrary, McCluney's original Missouri contract had been discharged when he accepted the promotion to North Carolina and that the North Carolina employment contract had in turn been discharged when McCluney transferred to Wisconsin. The court concluded that despite the origin of employment in Missouri, the intervening circumstances precluded application of the Missouri statute. By parallel reasoning, the intervening circumstances after 1971 preclude the application of the Kansas statute in the present case.

ham by way of rejoinder denies that Section 44–319 is wholly penal, but rather that it has a remedial aspect and that it is the latter aspect which is involved in the present case. For purposes of this opinion, we accept that argument by Bigham.

5. Note should be made that the statute involved in both *Bliven* and *McCluney* was already effective when the employment in those cases began. In that respect, both cases differ importantly from the instant case.

■ Bigham argues further that his petition alleged that McCall is a Kansas corporation and is subject to the laws of Kansas; and he points out that McCall's answer admitted that allegation. Bigham concludes that McCall is now estopped from denying the applicability of Kansas law, including Section 44–319, to it. He claims this only carries into effect the rule that a corporation remains subject everywhere to the law of the state under which it was created.

The only import of the McCall admission was that it had legal status as a duly organized Kansas corporation and that it is subject to the various laws and rules directly affecting its charter, legal existence, and corporate power and authority. That admission was proper and necessary under the universally recognized principles that when a corporation goes from its home state into another, it carries with it its charter and the regulations directly attending that charter. The rule just stated does not mean, as Bigham tries to argue, that the corporation carries with it into a foreign state all of the statutes and laws of the state under which it is incorporated. The rule in this respect is summarized in 17 Fletcher on Corporations Section 8318 (1977), as follows:

"It is held that it is the charter alone which by the law of comity is recognized and enforced in other jurisdictions, and not the general legislation or judicial decisions of the state in which the corporation is formed, since the general laws, regulations or decisions of the courts of a sister state are controlling only within its own limits, and such state has no power to give them force or effect in other jurisdictions. It follows, therefore, that where general legislation is enacted for the enforcement of a local policy only, it will not be presumed that such statutory provision was intended by the state, or by the persons forming the corporation, to enter into the charter contract and to regulate the corporation in its transactions outside of the state, and such general legislation does not go with a corporation when it leaves the state of its creation and will not affect the validity of the dealings of the corporation in foreign states or countries...."

Similarly: 20 C.J.S. Corporations § 1803 (1940); 18 Am.Jur.2d Corporations Section 81 (1965).

Bigham also argues that the application of Section 44–319 is required in order to give effect to Bigham's reasonable expectation. The only claim of a reasonable expectation in this regard would have to rest on the arguments previously considered and rejected. It cannot fairly be said that Bigham had any reasonable expectation at any time that Section 44–319 would apply to his employment in Riverside, Missouri during 1974 when the deductions complained of were made.

■ Declining to apply Section 44–319, on the general principle that it should not be given extra-territorial effect, also accords with the proper choice of the applicable law under general conflict of law principles. Missouri has adopted the principles set forth in Restatement (Second) of Conflict of Laws Section 188 (1971) which provides that unless the parties themselves have stipulated as to the choice of law, then the law of the state having the most significant relationship to the transaction and to the parties shall be applied. *National Starch and Chemical Corp. v. Newman*, 577 S.W.2d 99 (Mo.App.1979). The various factors existing in this case overwhelmingly call for the application of Missouri rather than Kansas law. All of the work done during the year 1974, which is the only period now in question, was performed in Missouri; Bigham's promotion to manager and the agreement as to the terms applicable to that position came into effect in Missouri; all of the delinquencies, for which the deductions now in question were made, occurred in Missouri; all of those deductions were computed and the checks were prepared at the McCall business office which was located in Missouri; the pay checks were delivered in Missouri; Bigham is a resident of Missouri; McCall not only is qualified to do business in Missouri but additionally has its home office in Missouri;

and Bigham chose to file this suit in Missouri. The only contacts connecting this controversy to Kansas are quite remote and lack any real materiality. Under all the circumstances, the clear focus is in Missouri, not Kansas. Under the principles controlling conflict of laws, the law of Missouri, not Kansas, should be applied.

The judgment is reversed.

All concur.